849 P.2d 925 (1993)
123 Idaho 464
In the Matter of BABY BOY DOE, A Minor Child.
INDIAN TRIBE, Intervenor-Appellant, Appellant on Appeal,
v.
Joe DOE and Jane Doe, Petitioners-Respondents-Respondents on Appeal.
No. 19512.
Supreme Court of Idaho, Boise, November 1992 Term.
March 19, 1993.
*927 Idaho Legal Aid Services, Inc., Coeur d'Alene, for intervenor-appellant. Shannon D. Work argued.
Underwood & Steele, Chtd., Boise, for petitioners-respondents. James S. Underwood argued.
JOHNSON, Justice.
This case concerns the application of the federal Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-1923, to the termination of the parental rights of an Indian father and the adoption of his child by a non-Indian couple. We reverse the decision of the magistrate judge (the trial court) that ICWA does not apply to the termination proceeding and to the placement of the child. We vacate the termination order, and remand the case to the trial court for further proceedings. We also reverse the award of attorney fees by the district judge on appeal from the trial court's decision.

I.

THE BACKGROUND AND PRIOR PROCEEDINGS.
The child who is the subject of this case was born in 1989. The mother is a non-Indian and was never married to the child's father. The child's father is an enrolled member of the Indian tribe (the tribe). The father maintained no contact with the mother during her pregnancy and has had no contact with the child since the birth. Shortly after the child was born, the mother approached an adoption agency to arrange adoption of the child. Through the agency, the mother chose a non-Indian married couple (the adoptive parents) to adopt the child and placed the child in their custody. The child has remained with the adoptive parents throughout the course of this case.
After placing the child with the adoptive parents, the mother consented to voluntary termination of her parental rights and to the adoption of the child by the adoptive parents. The adoptive parents petitioned the trial court for termination of the parental rights of the child's parents. Because the mother indicated to the adoption agency *928 that the child's father was a member of the tribe, the adoptive parents sent the required notice of the termination proceedings to the father and the tribe pursuant to federal guidelines and ICWA.
At the first hearing concerning termination of the father's parental rights, the father did not appear, but a non-attorney advocate from the tribe appeared at this hearing on behalf of the father and the tribe. The non-attorney advocate asserted that the father wanted custody of the child and that the tribe wished to intervene and have the trial court transfer the proceedings to tribal court pursuant to ICWA. The trial court appointed counsel to represent the father and granted the tribe additional time to move to intervene and to seek transfer of the case to tribal court.
On May 3, 1990, the trial court heard the motions to intervene and to transfer. In allowing the tribe to intervene, the trial court made an oral finding that the child was an Indian child and that ICWA governed the proceedings. This finding was based on a letter from the tribe's enrollment director indicating the father had applied to enroll the child in the tribe. The trial court stated that this letter was a determination by the tribe that the child was eligible for membership in the tribe. Because the mother filed an objection to the transfer of the case to the tribal court, the trial court rejected the transfer, as required by ICWA.
On May 21, 1990, the trial court held another hearing regarding termination of the father's parental rights. The tribe argued ICWA governed the proceedings and required the child to be placed for adoption within the tribal community. The tribe advocated placing the child with the child's paternal aunt and uncle, who lived on the reservation and wanted to adopt the child into their family. The adoptive parents argued against application of ICWA and against placing the child on the reservation, even if ICWA applied to the proceedings.
The trial court ruled that ICWA did not govern the proceedings, and terminated the father's parental rights without applying the requirements of ICWA. Although the trial court found the father was the child's natural father and was a member of the tribe, the trial court ruled that the child was not an "Indian child" as defined in ICWA, because the child was not eligible for membership in the tribe. The trial court cited guidelines published by the Bureau of Indian Affairs (BIA) as controlling. These guidelines advise state courts to treat determinations by an Indian tribe regarding eligibility for membership in the tribe as conclusive. Based on an affidavit from the enrollment director of the tribe, the trial court found that the tribe had declined to find the child was eligible for membership in the tribe and that this meant the tribe had conclusively determined the child was not eligible for membership in the tribe.
As an alternative legal theory to support its ruling that ICWA did not govern the termination proceedings, the trial court adopted an "Indian family" test as a prerequisite to application of ICWA. Under this approach, the trial court held ICWA only applied to child custody proceedings in which an Indian child is removed from an existing Indian family. The trial court reasoned that even if the child met the definition of "Indian child," ICWA does not apply where a child has never lived within the Indian community or has never been exposed to Indian culture. In this case, the trial court found the child was not being removed from an existing Indian family because the child had either lived with the non-Indian mother or the non-Indian adoptive parents since birth. The trial court also noted that the child had no contact with the father or any member of the father's family and that the father's family had not pursued a relationship with the child.
The trial court terminated the father's parental rights, and the tribe appealed to the district judge. The district judge affirmed the trial court's findings, but on different grounds from those stated by the trial court. The district judge held the child was not an Indian child because there was insufficient proof of paternity in the record to support a finding that the child *929 was the legal child of the father. The district judge also found that the tribe brought the appeal frivolously, unreasonably, and without foundation and ordered the tribe to pay more than $8,500.00 in attorney fees pursuant to I.C. § 12-121.
The tribe appealed to this Court, asserting the application of ICWA to the termination of the father's parental rights and to the placement of the child. The tribe also asserts that regardless of the application of ICWA, the district judge improperly assessed attorney fees against the tribe.

II.

THE PROVISIONS OF ICWA.
In 1978 Congress passed ICWA to address concerns surrounding the high incidence of removal of Indian children from their Indian families and tribes and the placement of Indian children in adoptive or foster homes outside of their extended families, tribes and cultures. 25 U.S.C. §§ 1901, 1902. ICWA recognizes that cultural biases in child custody proceedings contribute to this problem. To promote the stability of Indian tribes and to counter cultural biases, Congress enacted ICWA to provide minimum procedural and substantive requirements which state courts must apply to child custody proceedings involving Indian children.
In order to invoke the requirements of ICWA, state courts must first determine whether the proceedings are "child custody proceedings" as defined by 25 U.S.C. § 1903(1), and whether the child involved is an "Indian child" as defined by 25 U.S.C. § 1903(4). Without dispute, the proceedings in this case are "child custody" proceedings as defined in ICWA. ICWA expressly includes termination of parental rights proceedings within the statutory definition of child custody proceedings. § 1903(1)(ii).
The basic dispute in this case is whether the child is an "Indian child" under ICWA. ICWA defines an Indian child as: "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." § 1903(4). Whether the child meets this definition is discussed in the following section.
If these prerequisites are met, ICWA supplies procedural requirements and substantive standards that must be used by the state court instead of procedures and standards under state law. Several provisions of ICWA would apply to the proceedings in this case, if ICWA were applicable. ICWA requires that Notice of the proceeding be given to the Indian parent and the Indian tribe, and that the tribe be given the opportunity to intervene in the proceedings. §§ 1911(c), 1912(a). Before terminating an Indian parent's parental rights, ICWA requires the state court to make a determination on the record that beyond a reasonable doubt termination is required to prevent serious emotional or physical damage to the Indian child. § 1912(f). In an adoption proceeding, ICWA requires the state court to give preference to placement of the child with a member of the child's extended family, with the tribe, or with another Indian family. § 1915(a). In determining whether good cause exists for placement outside of the Indian community, the state court is directed to examine the reasons given in light of "the prevailing social and cultural standards of the Indian community." § 1915(d).

III.

THE CHILD IS AN "INDIAN CHILD."
The Indian tribe asserts that the trial court misapplied federal guidelines in concluding the child is not an Indian child under ICWA, and therefore, incorrectly found ICWA did not govern the proceedings. We agree.
This appeal is taken from a decision of the district judge sitting as an appellate court. Where the same issue presented to the trial court was presented to the district judge, and the district judge, sitting in an appellate capacity, made a decision based on the record established in the trial court, this Court will review the trial court's decision *930 without deferring to the decision of the district judge. Robinson v. Joint Sch. Dist. No. 331, 105 Idaho 487, 490, 670 P.2d 894, 897 (1983).
The adoptive parents argue that the trial court's decision that the child was not eligible for membership in the tribe is a question of fact to which we must give deference on appeal if it is supported by substantial and competent evidence. This mischaracterizes the issue. Whether the trial court correctly applied ICWA to the facts of the case requires this Court to examine the legal theories employed by the trial court in determining that the child was not eligible for membership in the tribe. This is a question of law and is subject to free review by this Court.
When a child custody matter requires a state court to resolve whether a child is an Indian child, the state court must make the necessary determinations regarding application of ICWA. This includes determining whether the child meets the definition of an Indian child contained in 25 U.S.C. § 1903(4). In this case, the trial court correctly looked to federal guidelines published by the BIA to aid its determination. The BIA guidelines state:
B.1. Determination That a Child is an Indian
(a) When a state court has reason to believe a child involved in a child custody proceeding is an Indian, the court shall seek verification of the child's status from either the Bureau of Indian Affairs or the child's tribe....
(b)(i) The determination by a tribe that a child ... is or is not eligible for membership in that tribe ... is conclusive.
44 Fed.Reg. 67,584 (1979).
The enrollment director for the tribe stated in an affidavit admitted in evidence at the May 21, 1990 hearing:
3. That the primary consideration is [sic] permitting a tribal member to enroll his or her child is residency on the reservation at the time of the child's birth, but ... landownership may substitute for residency;
4. That [the father] has owned land on the reservation since 1987;
5. That an additional requirement for enrolling a child is providing a birth certificate naming a tribal member as a parent;
6. That the birth certificate is missing from [the child's] application;
7. That a Paternity Affidavit signed by both parents naming a tribal member as a biological parent may substitute if the father's name does not appear on the birth certificate;
. . . .
11. That during the pendency of the application and prior to its vote, the Tribal Enrollment Committee cannot state conclusively whether or not the applicant is eligible for enrollment with the [tribe];
12. That [the enrollment director] cannot at this time state with certainty that [the child] is eligible for enrollment with the [tribe] because [the child's] application is incomplete and without the required proof of eligibility, [the child] cannot be enrolled.
In applying the federal guidelines, the trial court concluded:
The [t]ribe has declined to find that [the child] is either eligible for membership in that Tribe or that [the child] is a member of that Tribe. Their determination is conclusive and therefore [the child] is not an Indian Child as defined in 25 USCS [sic] Sec. 1903(4) and the Indian Child Welfare Act is not applicable to this proceeding.
The trial court's decision amounts to imposing a requirement that a tribe reach a conclusive determination regarding a child's eligibility for membership as a prerequisite to application of ICWA. We do not read ICWA or the BIA guidelines to impose this requirement.
ICWA requires the state courts to determine application of ICWA. This includes a determination by the trial court whether the child is an "Indian child" as defined by ICWA. There is no requirement that a tribe must make a conclusive determination of a child's eligibility for membership in the tribe as proof that the child is an Indian child. The provision in the BIA guidelines *931 requiring a state court to give conclusive effect to a determination by an Indian tribe as to a child's eligibility for membership in that Indian tribe is merely to aid state courts in deciding whether to apply ICWA. This directive does not require a tribe to determine a child's eligibility for membership before a state court may apply ICWA.
In addition, the statement in the enrollment director's affidavit is clearly not a "determination" as intended by the BIA guidelines. At most, it is a statement by the tribe that no determination was possible at that time. There is no evidence in the record to support a finding that the tribe determined the child is not eligible for tribal membership.
If a state court does not have a conclusive determination from the tribe or the BIA regarding a child's eligibility for tribal membership, the trial court must make its own determination regarding the child's eligibility for tribal membership. The party asserting the applicability of ICWA has the burden of producing the necessary evidence for the trial court to make this determination.
In this case, the evidence presented to the trial court established the applicability of ICWA. The evidence contained the tribe's requirements for "enrollment." Although enrollment and membership are not synonymous, eligibility for enrollment is evidence that the requirements for membership are met. 44 Fed.Reg. 67,584, 67,586 (enrollment is a common but not exclusive evidentiary means of determining membership in a tribe). Enrollment is an administrative function. The core of the inquiry under ICWA is eligibility for membership in the parent's tribe. The affidavit of the enrollment director explains the only reason the tribe could not make a conclusive determination regarding the child's eligibility for enrollment was because the application was missing documentary evidence regarding paternity in the form of a birth certificate or paternity affidavit. The trial court, however, found that the father is one of the child's parents. This finding, together with the father's ownership of land on the reservation, establishes the child's eligibility for membership in the tribe. The other requirements for enrollment go to the administrative aspect of enrollment and are not requirements of eligibility for tribal membership.

IV.

THE TRIAL COURT INCORRECTLY APPLIED AN "INDIAN FAMILY" REQUIREMENT.
The tribe also challenges the trial court's alternative holding that an Indian child must be part of an "Indian family" before ICWA applies. The tribe asserts this is an improper restriction on the application of ICWA. We agree.
The trial court's use of an Indian family requirement as a prerequisite to application of ICWA is a question of law to which this Court gives free review.
Although an Indian family requirement has been applied by the courts of other states, we believe that the United States Supreme Court has effectively undermined the imposition of this requirement.
In Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989), the Supreme Court held that federal domicile law applies in state court proceedings involving ICWA and that the parents' tribe has exclusive jurisdiction over the child custody proceeding even though the illegitimate Indian children in that case had never been on the reservation, with their Indian parents, or within the Indian culture. Mississippi Choctaw indicates that the jurisdictional provisions of ICWA apply to child custody proceedings involving Indian children regardless of where the children are born or where they are proposed for adoption. This application of ICWA is based on the interest the tribe has in its children.
In this case, application of an Indian family requirement would allow the non-Indian mother to circumvent application of ICWA and the tribe's interest in the child by making sure that the child is kept away from the reservation and out of contact with the father and his family. This would undermine *932 the tribe's interest in its Indian children, which the Supreme Court recognized in Mississippi Choctaw.
We also reject application of an Indian family requirement because the provisions of ICWA do not contain any limitation based on where the child is located. Limiting ICWA to situations in which an Indian child is being removed from an existing Indian family is, therefore, a judicially created exception to ICWA. Congress passed ICWA to limit state court power by creating mandatory protective procedures and minimum evidentiary standards that must be applied in child custody proceedings concerning Indian children. In light of the structure and nature of ICWA, it is inappropriate to use a judicially created exception to circumvent the mandates of ICWA.

V.

ICWA IS NOT INAPPLICABLE IN THIS CASE ON THE GROUND THAT THERE IS NO PROOF OF THE FATHER'S PATERNITY.
The adoptive parents invite this Court to find that the trial court's decision concerning the applicability of ICWA is harmless. They ask us to avoid remanding the case back to the trial court by finding ICWA does not apply because the tribe did not sufficiently prove the father's paternity. This is the approach taken by the district judge on appeal. We decline the invitation to find ICWA is inapplicable for this reason.
The district judge held that the requirements of ICWA do not apply in this case because the tribe failed to prove that the child was the child of the father. We reject this because it undermines findings of fact of the trial court.
In its order, the trial court specifically found that the father was one of the child's parents. This is a finding of fact that will not be overturned on appeal if it is supported by substantial and competent evidence. We note that paternity was not an issue in this case. Neither the mother nor the adoptive parents disputed the father's paternity. In fact, in their briefs to the district judge, neither party argued the issue of paternity.
The trial court had sufficient evidence to support its finding that the father was one of the child's parents. At the hearing on the motion to intervene, the tribe submitted a letter from the enrollment director for the tribe stating that the father had applied for the child's enrollment in the tribe. At the hearing for termination of parental rights, the trial court heard testimony from the father's sister that she had personally registered a paternity affidavit with the state of Idaho on the behalf of the father. The affidavit from the enrollment director for the tribe submitted during the May 21, 1990 hearing indicates the father had signed a paternity affidavit that was on file with the tribe. The foregoing evidence taken together is sufficient to support the trial court's finding that the father is one of the child's parents.

VI.

WE DECLINE TO DECIDE THE FATHER'S RIGHTS AND THE PLACEMENT OF THE CHILD UNDER ICWA.
The adoptive parents assert that even if ICWA governs the proceedings, this Court should hold that ICWA's requirements were met and should not upset the termination of the father's parental rights or the placement of the child. We decline to do so.
We are acutely aware that more than three years have elapsed since the child was placed with the adoptive parents. We understand the difficulty and danger of removing a child of this age from the home in which the child has been nurtured during this formative period. We cannot ignore, however, that the termination of the father's rights and the placement of the child by adoption were accomplished without applying ICWA.
In ordering the termination of the father's parental rights, the trial court employed the clear and convincing evidence standard of state law, rather than the beyond *933 a reasonable doubt standard of ICWA. Following the termination of the father's parental rights, the trial court held an adoption hearing in which the tribe was not represented or given the opportunity to present evidence. The trial court did not address the preference for adoptive placement under 25 U.S.C. § 1915(a).
The trial court must address the questions of termination and placement under ICWA on remand.

VI.

WE REVERSE THE AWARD OF ATTORNEY FEES BY THE DISTRICT JUDGE.
Because we find the trial court was incorrect in not applying ICWA to the proceedings in this case, we reverse the district judge's award of attorney fees based on the district judge's finding that the claim was frivolous, unreasonable, or without foundation.

VII.

CONCLUSION
We reverse the trial court's decision that ICWA does not apply to the proceedings in this case, vacate the termination order, and remand the case to the trial court for further proceedings.
We reverse the district judge's award of attorney fees.
We award the tribe costs on appeal. The tribe did not request attorney fees on appeal.
BISTLINE, McDEVITT and TROUT, JJ., concur.
BAKES, Judge, Pro Tem. (following retirement on February 1, 1993), dissenting:
I believe we should follow the decisions of the Supreme Court of Washington, Kansas and New Jersey in determining whether the Indian Child Welfare Act applies to this case. The decision of the United States Supreme Court in Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989), relied on by this Court in this case, is not dispositive. The facts of the Holyfield case were very different. In Holyfield both the parents were Indians and both were domiciled on the reservation. The Supreme Court in Holyfield held that the policy of the ICWA could not be defeated by "individual reservation-domiciled tribal members" intentionally leaving the reservation to have the child and put it up for adoption so that the child's domicile would not be on the reservation. Mississippi Band of Choctaw Indians v. Holyfield at 53, 109 S.Ct. at 1610.
The facts of this case are significantly different. The trial court's findings of fact, which are supported by the evidence in the record, conclude that the only contacts between the reputed Indian father and the non-Indian mother were away from the reservation; the non-Indian mother never lived with the reputed Indian father; and neither lived on the Indian reservation. Once the reputed Indian father learned that the non-Indian mother was pregnant he stopped all contact with her and has never claimed paternity of the child. No Indian family or reservation domicile is involved in this case. All that is involved is a non-Indian woman, with no contacts with an Indian tribe or reservation, who became impregnated, allegedly by a man who reputedly is an enrolled member of an Indian tribe.
In contrast, both parents in the Holyfield case were of Indian heritage, both were domiciled on the reservation, and both parents were involved in the adoption process.
In the recent case of the Matter of Adoption of Crews, 118 Wash.2d 561, 825 P.2d 305 (1992), the Washington Supreme Court quoted from the hearings of Congress to the effect that the purpose of the Act was to stop the breakup of Indian families by the "removal of Indian children from their families and the placement of such children in foster or adoptive [Indian] homes which will reflect the unique values of Indian culture ..." 25 U.S.C. § 1901(4)-(5). In quoting from In re Adoption of Baby Boy *934 L., 231 Kan. 199, 643 P.2d 168 (1982), the Court in Crews agreed that:
the underlying thread that runs throughout the entire Act [is] to the effect that the Act is concerned with the removal of Indian children from an existing Indian family unit and the resultant breakup of the Indian family.
Matter of Adoption of Crews, 825 P.2d at 309.
For the breakup of an Indian family to occur it is necessary for an "Indian family" to exist. Recently the Oklahoma Supreme Court, in Matter of S.C., 833 P.2d 1249 (Okl.1992), similarly expressed the intent of the ICWA to be to prevent the "removal of Indian children from an existing Indian Family unit and the resultant breakup of the Indian family." Matter of S.C., 833 P.2d at 1255 (emphasis added); see also Matter of Adoption of a Child of Indian Heritage, 111 N.J. 155, 543 A.2d 925 (1988). While a child of Indian heritage must be involved in an adoption or foster placement for the ICWA to be applicable, the Act can also be reasonably interpreted to require that the placement of the child not breakup an "Indian family" unit. Where no Indian family unit has ever existed, no breakup of an Indian family unit can take place.
The rationale of these state cases, which hold that an Indian family unit must be present before the ICWA is applicable, is supported by more recent events in Congress. A 1987 amendment to the ICWA presented to the Senate by the Committee on Indian Affairs would have made application of the ICWA mandatory regardless of whether the child had "previously lived in Indian Country, in an Indian cultural environment or with an Indian parent." See S.1976, 100 Cong., 1st Sess., 133 Cong.Rec. S18532, S18533 (daily ed. Dec. 19, 1987). The amendment never made it to the floor of the Senate and has not been presented since. Congress was well aware of the decisions employing the "existing Indian family" doctrine and apparently chose not to change the statutory language of the ICWA to modify that interpretation, as the Oklahoma Supreme Court has observed. Matter of S. C., 833 P.2d at 1255. The child involved in this case has never been part of an "Indian family," and accordingly, the ICWA does not apply to the facts of this case.