**The People of the State of Colorado, In the Interest of A.G.–G., a Child, Upon the Petition of the El Paso County Department of Social Services, n/k/a the El Paso County Department of Human Services, Petitioner–Appellee,**

**and Concerning A.G. and A.G., Jr., Respondents–Appellants.**

**Nos. 93CA2204, 94CA0009.**

Colorado Court of Appeals,
Div. I.

April 20, 1995.

Rehearing Denied June 15, 1995.

Catherine Woelk–Rudisill, guardian ad litem.

El Paso County Atty., Beth Whittier, County Atty., Judith L. Hufford, Colorado Springs, for petitioner-appellee.

Thomas A. Barnes, Jr., Colorado Springs, for respondent-appellant A.G.

S. David Kutinsky, Woodland Park, for respondent-appellant A.G., Jr.

Opinion by Judge METZGER.

In this consolidated appeal, A.G. (mother) and A.G., Jr. (father) appeal from a judgment of the district court which terminated their parent-child legal relationship with A.G.–G., their daughter (the child). We affirm.

In November 1991, mother and father, each 17 years old, were living with the child, then four months old, in Colorado Springs. Following unaccounted for injuries, i.e., a skull fracture and a fractured tibia, the child was adjudicated dependent and neglected. A treatment plan was devised, pursuant to statutory mandate, and after mother and father successfully completed it, the child was returned home.

Three weeks later, the child was hospitalized with fractures to her left femur and tibia, three frontal subdural hematomas as a result of a skull fracture, soft tissue contusions, abrasion of the temple, and bruises to the buttocks and to the legs. The father took responsibility for inflicting these injuries and was sentenced to a term in the Department of Corrections (DOC) as a result. The Department of Social Services, n/k/a the Department of Human Services (the Department), thereafter moved to terminate the parent-child relationship and, after a trial, the court entered the judgment here at issue.

I.

Mother and father first contend that the trial court erred in not applying the standards for termination found in the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901, et seq. (1988). We disagree.

The ICWA sets forth minimum federal standards for the removal of an Indian child from his or her family. 25 U.S.C. § 1902 (1988); People in Interest of J.L.G., 687 P.2d 477 (Colo.App.1984). For the ICWA to apply, therefore, an "Indian child" must be involved in the proceedings.

The ICWA defines an "Indian child" as "any unmarried person who is under the age of eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4) (1988) (emphasis supplied). Until the party asserting the applicability of the ICWA establishes, on the record, that the child meets one or both of these criteria, the ICWA is not applicable. See People in Interest of A.E., 749 P.2d 450 (Colo.App. 1987).

The ICWA does not set forth the requisite criteria for membership in an Indian tribe; instead, each Indian tribe has the authority to determine its membership criteria and to decide who meets those criteria. Formal membership requirements differ from tribe to tribe, as does each tribe's method of keeping track of its own membership. There is no one method of proof of membership, but the testimony of a representative of tribal government, Application of Angus, 60 Or.App. 546, 655 P.2d 208 (1982), or enrollment in an Indian tribe may be probative of membership. People in Interest of A.E., supra.

The federal guidelines for state court Indian child custody proceedings advise that determination by an Indian tribe as to a child's eligibility for membership in that tribe is conclusive. Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584 (1979); see People in Interest of A.E., supra. Nevertheless, it is unnecessary

that a tribe or the Bureau of Indian Affairs (BIA) reach a conclusive determination regarding a child's eligibility for membership as a prerequisite for the ICWA to apply. Without a conclusive determination, the trial court must ascertain if the child is an "Indian child." *Matter of Baby Boy Doe,* 123 Idaho 464, 849 P.2d 925 (1993). *See also* Conference of Western Attorney Generals, American Indian Law Deskbook (1993).

■ The party asserting the applicability of ICWA has the burden to produce the necessary evidence for the trial court to determine if the child is an "Indian child." *In re Interest of J.L.M.,* 234 Neb. 381, 451 N.W.2d 377 (1990); *Matter of Baby Boy Doe, supra.*

Such evidence could include an affidavit of a tribal official stating the tribe's requirement for enrollment and that the child's father or mother was enrolled as a member of the tribe and owned property on the reservation. *Matter of Baby Boy Doe, supra.* Additionally, testimony by the child's biological parents that they are members of federally recognized Indian tribes, corroborating testimony by tribal authorities and tribal enrollment forms showing the parents' membership, has been deemed to constitute sufficient evidence that a child was an "Indian child". *Application of Angus, supra.*

However, the evidence has been determined to be insufficient when the record was devoid of any indication that the child, father or mother was a member of an Indian tribe, and only school records indicated that the father was an Indian. *Matter of Adoption of Baby Boy W.,* 831 P.2d 643 (Okla.1992).

We find mother's reliance on *Matter of N.S.,* 474 N.W.2d 96 (S.D.1991) misplaced because that case is factually inapposite. There, the mother of N.S. was non-Indian; however, N.S.'s father was a member of the Cheyenne River Sioux tribe. The father's tribe was notified of the custody termination proceedings, and it acknowledged N.S. and his father's tribal membership in a letter sent to the trial court.

■ Here, although mother and father informed their caseworker and also testified that each had Indian heritage in the Sioux or Blackfoot Indian tribes, nothing in the record established their or the child's membership or eligibility for membership in any tribe. Furthermore, although the Department gave notice of these proceedings to the Secretary of the Interior pursuant to the ICWA, no tribe responded. Finally, no evidence concerning the membership criteria for any tribe was introduced.

The trial court here, therefore, did not err in determining that the ICWA was not applicable to these proceedings.

## II.

Father contends the trial court erred in determining that an appropriate treatment plan had been adopted for him. We disagree.

An "appropriate treatment plan" is one "which is reasonably calculated to render the particular [parent] fit to provide adequate parenting to the child within a reasonable time and which relates to the child's needs." Section 19–3–508(1)(e)(II), C.R.S. (1994 Cum. Supp.).

■ A treatment plan's provisions must be designed to assist the parent in overcoming the problems that led to the state's intervention and to adjudication of the child as dependent and neglected. *People in Interest of L.G.,* 737 P.2d 431 (Colo.App.1987).

■ The appropriateness of a treatment plan is measured against the factors in existence at the time of adoption of the plan and is evaluated by the likelihood of success in reuniting the family. *People in Interest of M.M.,* 726 P.2d 1108 (Colo.1986). However, the fact that a plan is not ultimately successful does not mean that it was therefore inappropriate. *People in Interest of M.M., supra.*

Here, father argues that he specifically told his caseworker about his anger control problem and his ongoing depression. Thus, he contends, the treatment plan should have contained provisions such as requirements for a psychological evaluation or counseling to remedy these problems. Absent such provisions, he argues, the treatment plan was inappropriate when adopted.

However, the Department's pre-disposition report and the testimony of the Department's caseworkers reveal that, at the time the treatment plan was drafted and adopted, the caseworkers knew of father's prior episode of depression following his grandfather's death. However, there is no indication that father indicated that he was suffering from ongoing depression. Furthermore, the caseworkers were unaware that father might have a problem with anger control. Moreover, the caseworkers testified that no factors such as drug or alcohol abuse or marital discord, which might indicate a need for a psychological evaluation, appeared to be present at the time the treatment plan was adopted.

The caseworker who drafted the treatment plan testified that the Department workers felt that, although the injuries to the child may have been an indicator of an anger control problem by someone, the Department was never able to assign the blame for her injuries to any particular person. Furthermore, the Department caseworkers felt, the abuse to the child was more likely to have been a result of the parents' youth and lack of parenting knowledge and education.

The credibility of witnesses, the sufficiency, probative effect and weight of the evidence, and the inferences and conclusions to be drawn therefrom are all within the province of the trial court, whose conclusions will not be disturbed on review unless so clearly erroneous as to find no support in the record. *People in Interest of C.A.K.,* 652 P.2d 603 (Colo.1982).

Given this record, and the conflicting evidence it contains, we find no error in the trial court's determination that the treatment plan was appropriate when adopted. In so concluding, we note and reject father's argument that, since his DOC case manager recognized he had a problem with anger control and recommended he take an anger control course after his incarceration for child abuse, the Department's caseworker should have been able to determine that he needed help with anger control at the time the treatment plan was drafted. Unlike the caseworker, the case manager had the benefit of hindsight in making his determination.

## III.

Father finally contends that the trial court's findings are insufficient to support its conclusion that his conduct was unlikely to change within a reasonable time. We disagree.

The findings supporting an order terminating the parent-child legal relationship are adequate as long as they conform to the statutory criteria set forth in § 19-3-604, C.R.S. (1994 Cum.Supp.). *See People in Interest of A.J.,* 757 P.2d 1165 (Colo.App.1988).

Here, the trial court's findings conform to the statutory criteria set forth in § 19-3-604(1)(c), C.R.S. (1994 Cum.Supp.). Thus, we find no error.

Judgment affirmed.

MARQUEZ and CASEBOLT, JJ., concur.