### *In re* ELLIOTT

Docket Nos. 185137, 185425. Submitted February 21, 1996, at Grand Rapids. Decided August 6, 1996, at 9:35 A.M.

The Department of Social Services petitioned the Kalamazoo County Probate Court, seeking that the court take jurisdiction of Tyler J. Elliott, a minor child, and that it terminate the parental rights of the child's parents, Stepfanie L. Boyd and Paul Elliott. Although numerous hearings took place in a period of more than a year after the filing of the petition, it was not until Paul Elliott testified during the hearing concerning the termination of parental rights that the court was apprised that Stepfanie Boyd was a member of, or eligible for membership in, the Sault Ste. Marie Tribe of Chippewa Indians. The proceedings were adjourned to permit notification of the Sault Ste. Marie Tribe pursuant to the provisions of the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq*. The court, Carolyn H. Williams, J., permitted the Sault Ste. Marie Tribe to intervene, finding that the child was an Indian child within the meaning of the ICWA on the basis that his mother was a member of that tribe. When the termination proceedings reconvened, counsel for the father argued that the court would need to start over because § 1912(f) of the ICWA, 25 USC 1912(f), required the testimony of a qualified expert before the parental rights could be terminated. In response, the petitioner argued that sufficient testimony had been presented at the prior hearing to satisfy even the ICWA standards. The court decided to proceed, holding that because the mother and the child had not had any particular involvement with the Native American lifestyle, there was no need for expert testimony concerning the maintaining of those cultural and social ties and, thereafter, terminated the parental rights of the respondents on the basis of the previously presented testimony of two caseworkers. Each respondent appealed, and the appeals were consolidated.

The Court of Appeals *held*:

1. Although some courts have agreed with the position taken by the probate court that the testimony of a qualified expert witness is not necessary where the parent or child has not been involved in the Indian culture, the better-reasoned position is that strict application of the expert witness provision of § 1912(f) is required. The application of such an exception undercuts the clear import of

§ 1912(f) and fails to protect adequately the interests of the Indian tribes in maintaining Indian culture. Accordingly, the probate court erred in determining that compliance with the expert witness provision of § 1912 of the ICWA was not required and in terminating the respondents' parental rights in the absence of the testimony of a qualified expert witness within the meaning of § 1912.

2. The probate court erred during the preliminary hearing in failing to inquire pursuant to MCR 5.965(B)(7) whether the child or parent was a registered member of any American Indian tribe or band or whether the child was eligible for such membership.

3. A dual burden of proof must be met in a proceeding to terminate the parental rights with respect to an Indian child: the probate court must find beyond a reasonable doubt that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child within the meaning of § 1912(f) of the ICWA and must find that clear and convincing evidence supports termination under one of the enumerated state statutory grounds.

Reversed and remanded.

1. INDIANS — CHILD CUSTODY — TERMINATION OF PARENTAL RIGHTS — INDIAN CHILD WELFARE ACT — EXPERT WITNESSES.

A state court may not terminate the parental rights of the parents of an Indian child without first having heard the testimony of a witness who has been qualified as an expert within the meaning of the Indian Child Welfare Act (25 USC 1912[f]).

2. INDIANS — CHILD CUSTODY — TERMINATION OF PARENTAL RIGHTS — INDIAN CHILD WELFARE ACT — STATE LAW.

A court in a proceeding involving the termination of the parental rights of the parents of an Indian child in which the applicable state law provides a different standard of protection than that afforded by the Indian Child Welfare Act should apply the law that affords the higher standard of protection (25 USC 1912).

3. PARENT AND CHILD — CHILD CUSTODY — INDIAN CHILDREN — PRELIMINARY HEARINGS — COURT RULES.

A court at the preliminary hearing of a petition concerning the custody of a child must inquire whether the child or parent is a registered member of any American Indian tribe or band or whether the child is eligible for such membership (MCR 5.965[B][7]).

4. INDIANS — CHILD CUSTODY — TERMINATION OF PARENTAL RIGHTS — INDIAN CHILD WELFARE ACT — BURDEN OF PROOF.

A dual burden of proof must be met in a proceeding to terminate the parental rights with respect to an Indian child: the probate court

must find beyond a reasonable doubt that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child within the meaning of the Indian Child Welfare Act and must find that clear and convincing evidence supports termination under one of the enumerated state statutory grounds (25 USC 1912[f]).

*James J. Gregart*, Prosecuting Attorney, and *Michael H. Dzialowski*, Assistant Prosecuting Attorney, for the petitioner.

*James A. Bransky*, for Stepfanie Boyd.

*Frederick R. Hubbell*, for Paul Elliott.

Before: MARKEY, P.J., and HOLBROOK, JR., and M. J. MATUZAK,* JJ.

HOLBROOK, JR., J. Respondents, Stepfanie Boyd and Paul Elliott, appeal as of right from a Kalamazoo County Probate Court order terminating their parental rights to Tyler James Elliott, who was 3½ years old at the time of trial. In this appeal, we must determine whether the Indian Child Welfare Act of 1978 (ICWA), 25 USC 1901 *et seq.*, was applicable to this proceeding in the first instance and, if so, whether the probate court failed to comply with the act, rendering the termination order invalid. Because we hold that the answer to both these questions is yes, we reverse and remand for a new hearing.

I

In October 1993, a protective services worker filed a complaint with the Kalamazoo County Probate Court, alleging that (1) in August 1992, respondent-mother had smoked marijuana in Tyler's presence, (2)

---

* Circuit judge, sitting on the Court of Appeals by assignment.

in April 1993, she had left Tyler alone for several hours while she was at work, and (3) in September 1993, she had left Tyler alone in a cold motel room strapped in a car seat, wearing only a diaper. The matter was referred to the Kalamazoo County Department of Social Services, and a petition was filed with the probate court, asserting that the court should take jurisdiction of the child. Despite numerous hearings before the court between October 1993 and November 1994, it was not discovered that Tyler was an "Indian child," as defined in § 1903(4) of the ICWA, 25 USC 1903(4), until the termination hearing began in February 1995. At that time, two caseworkers from Catholic Family Services, Eric Janssen and Tere Marshall, testified, recommending that respondents' parental rights be terminated. Respondent-father then took the stand, and for the first time the court was made aware of the fact that respondent-mother was a member of, or eligible for membership in, the Sault Ste. Marie Tribe of Chippewa Indians.[1] The court ultimately adjourned the proceedings to allow for investigation of this issue and, if necessary, for notice to be provided to the Chippewa Tribe.

Soon thereafter, the tribe petitioned the court for permission to intervene. The court entered an order permitting intervention after determining that this matter constituted a "child custody proceeding" as defined in § 1903(1) of the ICWA, 25 USC 1903(1), and recognizing that Tyler is an "Indian child" as defined in § 1903(4), inasmuch as he is the biological child of respondent-mother, an enrolled member in the Chippewa Indian Tribe, and, accordingly, was eligible for

---

[1] Respondent-mother was not present at the termination hearing.

membership in the tribe. When the proceedings were subsequently reconvened in April 1995, respondent-mother's counsel requested that the proofs be reopened so that updated information could be presented regarding the mother's resolve to comply with the parent-agency agreement. Respondent-father's counsel argued that because termination of parental rights under the ICWA required qualified expert testimony, the court would need to "start over." Petitioner argued that sufficient evidence had been presented at the earlier hearing to support termination, even under the strict standards of the ICWA. The court decided to proceed, explaining as follows:

> It may be true that if this matter were to be tried under the [ICWA], there would be an opportunity for the provision of expert testimony regarding the placement of the child in an Indian versus a non-Indian home. However, in reviewing the file, I note that there has never been any particular involvement on the part of Ms. LeBlanc or her child in a Native American reservation or family or lifestyle. This is one of the issues that I think the expert testimony would go to in terms of maintaining social and cultural ties. To the best of our ability to discern from the court records, that has not been a primary focus of this child's life in the custody of his mother. So I'm not real sure that that justifies a basis for delaying a decision in this case.

After proceeding to terminate respondents' parental rights, the court stated:

> I do not believe that the issues relating to whether the child is—or is eligible for membership in a Native American tribe outweigh the fact that the Native American element has not been a consistent component of his life from the time he has been born. And certainly not from the time that his mother came to live in Kalamazoo and pursue her own career.

II

A

Pursuant to the ICWA, child custody proceedings involving foster care placement or termination of parental rights to an Indian child are subject to specific federal procedures and standards. *In re Johanson*, 156 Mich App 608, 611-612; 402 NW2d 13 (1986). As a declaration of policy, Congress established these "minimum Federal standards for the removal of Indian children from their families" to protect the best interests of Indian children and to promote the stability and security of Indian tribes and their families. 25 USC 1902. The act is intended not only to protect the interests of individual Indian children and families but also to protect the interest of the tribes themselves in long-term tribal survival. *Mississippi Band of Choctaw Indians v Holyfield*, 490 US 30; 109 S Ct 1597; 104 L Ed 2d 29 (1988). The underlying rationale of the act is to discourage Indian child welfare determinations from being based on " 'a white middle-class standard.' " *Id.* at 37, quoting H R Rep No 95-1386, 95th Cong, 2d Sess, at 24, reprinted in US Code Cong & Admin News 7530 (1978).

Pursuant to § 1914 of the ICWA, 25 USC 1914, an "Indian child," any "parent or Indian custodian," or "the Indian child's tribe" may petition any court of competent jurisdiction to invalidate the foster care placement or termination of parental rights under state law "upon a showing that such action violated any provision" of §§ 1911, 1912, and 1913 of the ICWA, 25 USC 1911, 1912, 1913. See also *Johanson, supra* at 612. Respondents assert that the probate court failed to comply with certain provisions of the ICWA, resulting in an invalid termination order. Petitioner argues

in favor of upholding the termination order, asserting that the ICWA was inapplicable because termination of respondents' parental rights would not result in the break-up of an Indian family, given that neither respondent-mother nor the minor child had shown any particular involvement in the Native American culture.

Respondents' various claims on appeal arise from the probate court's failure to comply with § 1912 of the ICWA, 25 USC 1912, which provides in pertinent part:

> (a) In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. . . . No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe . . . .

*    *    *

> (d) Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

> (e) No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

(f) No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

See also MCR 5.980 (procedure for child custody proceeding involving Indian child who resides off reservation, as in this case).

Here, the probate court created an exception to strict application of the ICWA by finding that "testimony of qualified expert witnesses" was unnecessary given the lack of involvement by the mother or minor child in Indian culture. We agree with respondents that the court committed clear legal error in its interpretation of the ICWA and that the court's termination order is invalid. Although some jurisdictions have adopted the "existing Indian family" exception to the ICWA, we do not find the analysis of those cases to be persuasive. See, e.g., *Hampton v JAL*, 658 So 2d 331 (La App, 1995), aff'd 662 So 2d 478 (1995); *In re Adoption of Crews*, 118 Wash 2d 561; 825 P2d 305 (1992); *In re SC*, 833 P2d 1249 (Okla, 1992); *In re Adoption of TRM*, 525 NE2d 298 (Ind, 1988); *In re Adoption of Baby Boy L*, 231 Kan 199; 643 P2d 168 (1982).

Instead, we prefer the view adopted by those courts that have rejected the judicially created "existing Indian family" exception to application of the ICWA. See, e.g., *In re Baby Boy Doe*, 123 Idaho 464; 849 P2d 925 (1993), cert den sub nom *Swenson v Oglala Sioux Tribe*, 510 US 860 (1993); *In re Adoption of SS*, 252 Ill App 3d 33; 622 NE2d 832 (1993); *In*

*re Adoption of Quinn*, 117 Or App 579; 845 P2d 206 (1993); *In re Crystal K*, 226 Cal App 3d 655; 276 Cal Rptr 619 (1990); *In re Junious M*, 144 Cal App 3d 786, 796; 193 Cal Rptr 40 (1983); *ABM v MH*, 651 P2d 1170, 1173 (Alas, 1982). See also *Hampton, supra* (Stewart, J., dissenting). We agree with these courts that application of the exception undercuts the plain import of the ICWA and fails to consider adequately the interests of the Indian tribes themselves, especially in involuntary proceedings, such as in this case.[2] The dissent in *Hampton, supra* at 340, illustrates this latter point:

> In contrast to the notice required in involuntary proceeding [sic], notice to the tribe is not required under the Act in voluntary proceedings. The obvious conclusion to be drawn from the contrast is that Congress on the one hand recognized the superior position of the parent's desires in a voluntary proceeding. On the other hand, Congress must have recognized that an involuntary proceeding would not be brought unless the parent at least allegedly had abused, abandoned, or neglected the child to such an extent that the State could take the child from the parent. In this situation, the tribe's rights become a central focus because if the parent no longer should be allowed to shape the child's future, the tribe should have the opportunity to do so.
>
> However, under the "Indian family" exception, the tribe's right to notice under § 1912(a) only would come into play when the parent is both a "good Indian" who is raising the child in an "Indian family environment" and exposing the child to Indian culture, and a "bad Indian" who is so lacking as a parent that parental rights are in jeopardy of being involuntarily terminated. The intersection of these two sets,

---

[2] We recognize that there are distinctions between involuntary child custody proceedings, such as the present case, and voluntary relinquishment or adoption proceedings. Whether application of the ICWA may be limited in cases of voluntary relinquishment or adoption is not an issue before us in this case. Cf. *In re Bridget R*, 41 Cal App 4th 1483; 49 Cal Rptr 2d 507 (1996).

if it contains any elements at all, is so small as to effectively allow the exception to swallow the rule.

We also believe that the "existing Indian family" exception was implicitly rejected by the United States Supreme Court in *Holyfield, supra,* where the Court thoroughly examined the legislative history and underlying policies of the ICWA. See *In re Baby Boy Doe, supra* at 470-471. In *Holyfield,* an adoption petition was filed involving twin babies whose unmarried parents were enrolled members of the Choctaw Indian Tribe and resided on the tribal reservation in Mississippi. The babies were born off the reservation, by the parents' design. The parents voluntarily consented to the adoption of the babies by a non-Indian couple, and a final decree of adoption was thereafter entered in a state court. The tribe later moved to vacate the adoption decree on the ground that under the ICWA exclusive jurisdiction was vested in the tribal court. The Mississippi Supreme Court affirmed the lower court's denial of the tribe's motion. However, the United States Supreme Court reversed, holding that the children were domiciled on the reservation for purposes of the exclusive tribal jurisdiction provision of the ICWA, despite the fact that the children were never physically present on the reservation and despite the fact that the parents had voluntarily surrendered the children for adoption. The Supreme Court reasoned:

> Congress was concerned not solely about the interest of Indian children and families, but also about the impact on the tribes themselves of the large numbers of Indian children adopted by non-Indians. . . . The numerous prerogatives accorded the tribes through the ICWA's substantive provisions, *e.g.,* §§ 1911(a) (exclusive jurisdiction over reserva-

tion domiciliaries), 1911(b) (presumptive jurisdiction over nondomiciliaries), 1911(c) (right of intervention), 1912(a) (notice), 1914 (right to petition for invalidation of state-court action), 1915(c) (right to alter presumptive placement priorities applicable to state-court actions), 1915(e) (right to obtain records), 1919 (authority to conclude agreements with States), must, accordingly, be seen as a means of protecting not only the interests of individual Indian children and families, but also of the tribes themselves. [*Holyfield, supra* at 49.]

In light of the above, we hold that an "existing Indian family" exception would be in direct conflict with the concept of tribal sovereignty and the important public policy of improving tribal ties reflected in the ICWA.

B

With regard to the evaluation of "qualified expert witnesses," this Court explained in *In re Kreft,* 148 Mich App 682, 689-690; 384 NW2d 843 (1986):

There is no definition of "qualified expert witness" in the Indian Child Welfare Act. However, the House Report prepared in conjunction with the act states that the phrase "is meant to apply to expertise beyond the normal social worker qualifications." H R Rep No 95-1386, 95th Cong, 2d Sess, reprinted in US Code Cong & Ad News 7530, 7545 (1978). In addition, guidelines prepared by the U.S. Department of Interior, Bureau of Indian Affairs, provide:

"Persons with the following characteristics are likely to meet the requirements for a qualified expert witness for purposes of Indian child custody proceedings:

"(i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organizations and child rearing practices.

"(ii) A lay expert witness having substantial experience with the delivery of child and family services to Indians,

> and extensive knowledge of prevailing social and cultural standards and child rearing practices within the Indian child's tribe.
>
> "(iii) A professional person having substantial education and experience in the area of his or her specialty." [Guidelines for State Courts: Indian Child Custody Proceedings] 44 Fed Reg 67593, § D.4(b) [1979].

Furthermore, the act has been interpreted to mean that only one "qualified expert witness" need testify. *Kreft, supra* at 690.

At the termination hearing in this case, the probate court heard the testimony of two caseworkers from Catholic Family Services, but no foundation was laid regarding their qualifications as expert witnesses. On rehearing, we believe Bureau of Indian Affairs (BIA) Guideline D.4(b)(iii) may be particularly helpful to the court, given the apparent lack of involvement of respondent-mother or the minor child in Indian culture. Where cultural bias is not implicated, a qualified expert witness need not have special knowledge of Indian life, but must have expertise beyond the normal social worker qualifications. See *In re Morgan,* 140 Mich App 594, 603, n 3; 364 NW2d 754 (1985). Thus, to the extent that the probate court in this case held that *no* expert testimony was necessary, we find this to constitute clear legal error. Although the ICWA expressly mandates that "qualified expert witnesses" testify before a child is placed in foster care or parental rights are terminated, the BIA guidelines provide courts with the necessary discretion to determine the nature and extent of the proposed expert's qualifications.[3]

---

[3] Clearly, if an interested tribe has intervened, it may present qualified expert witnesses of its own.

Accordingly, we conclude that to the extent the probate court adopted an "existing Indian family" exception thereby abrogating the ICWA requirement of qualified expert witnesses, it committed clear legal error. We reverse and remand for a new hearing, because no foundation was laid with respect to the expert qualifications of the witnesses who did testify at the hearing.

III

Having determined that the federal minimum standards of the ICWA are applicable in this matter and that a new hearing is mandated under § 1914 of the ICWA, we need only provide a cursory examination of respondents' remaining specific claims regarding the probate court's failure to comply with certain provisions of § 1912 of the ICWA and MCR 5.965, 5.980.

Where a state or some other federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than that afforded under the ICWA, a state or federal court shall apply the higher standard. 25 USC 1921. Michigan imposes a more stringent standard than that found in § 1912(a) of the ICWA to ensure that inquiry and notification are performed. Thus, although the probate court in this case "did not know or had no reason to know," at the preliminary hearing held on October 1, 1993, that Tyler was an Indian child under § 1912(a), the court failed to comply with the explicit directive in MCR 5.965(B)(7) to inquire about respondent-mother's or the minor child's tribal status. Consequently, although emergency removal of the child from respondent-mother's care and custody was proper to prevent immediate physical harm, MCR

5.980(B); *State ex rel Juvenile Dep't of Clackamas Co v Charles,* 106 Or App 637, 639; 810 P2d 393 (1991), the probate court's failure to adhere to the inquiry and notice requirements at the subsequent preliminary hearing alone may have constituted reason to invalidate the proceedings. 25 USC 1914. See also *In re Johanson, supra* at 612.

Next, respondent-father argues that the probate court erred in applying the less onerous clear and convincing standard to the termination of his parental rights, rather than the beyond a reasonable doubt standard. In a state termination proceeding involving an Indian child, both the "federal minimum standards" of the ICWA and the state grounds for termination must be proved. Section 1912(f) of the ICWA, 25 USC 1912(f), provides:

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, *supported by evidence beyond a reasonable doubt,* including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. [Emphasis added.]

The burden of proof for termination of parental rights under this state's Revised Probate Code is clear and convincing evidence of one or more enumerated statutory grounds. MCL 712A.19b(3); MSA 27.3178 (598.19b)(3). Thus, we find that, in an Indian child custody proceeding, a dual burden of proof must be met: the probate court must find beyond a reasonable doubt that "continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child," *and* the court must also find that clear and convincing evi-

dence supports termination under the applicable state statutory ground.[4] Accord *In re DSP*, 166 Wis 2d 464; 480 NW2d 234 (1992); *In re Bluebird*, 105 NC App 42, 47-48; 411 SE2d 820 (1992).

Here, the probate court terminated respondent-father's parental rights pursuant to MCL 712A.19b (3)(g); MSA 27.3178(598.19b)(3)(g), finding clear and convincing evidence that he failed to provide proper care and custody of Tyler, and the court terminated respondent-mother's parental rights pursuant to MCL 712A.19b(3)(a)(ii); MSA 27.3178(598.19b)(3)(a)(ii), finding beyond a reasonable doubt that she had abandoned Tyler. The court did not make any findings regarding § 1912(f) of the ICWA. On rehearing, the probate court must make separate findings on the record regarding termination under § 1912(f) and under the applicable state statutory ground, applying the dual burden of proof as discussed above.

Reversed and remanded for a new hearing. The probate court shall continue the minor child in his current foster care placement during the pendency of the proceedings. We retain no further jurisdiction.

---

[4] To the extent that *In re Morgan, supra* at 603, can be read to require that the federal standard of beyond a reasonable doubt be applied to a state statutory ground for termination, we disagree with that holding. Cf. *In re Kreft, supra* at 687 (holding that the federal ICWA requirements must be established *"in addition to* whatever state law grounds are asserted as a basis for terminating parental rights" [emphasis added]).