*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* P. LEDESMA, Minor.

UNPUBLISHED
February 13, 2020

No. 350217
Berrien Circuit Court
Family Division
LC No. 2016-000084-NA

Before: SAWYER, P.J., and MARKEY and STEPHENS, JJ.

PER CURIAM.

Respondent appeals by right the trial court order terminating his parental rights to this minor Potawatomi child under MCL 712A.19b(3)(c)(*i*) (failure to rectify the conditions leading to adjudication) and (j) (reasonable likelihood of harm if returned to parent). Respondent challenges only the best-interest determination. We affirm.

The child had been removed from the mother, a member of the Pokagon Band of the Potawatomi, at birth based on evidence that he was born with opiates, Tramadol, and methamphetamine in his system, and the mother's admission to use of methamphetamine during her pregnancy. The mother's parental rights were terminated shortly thereafter, and she is not a party to this appeal. The child was placed with his maternal aunt and her husband, also members of the Pokagon Band. The original petition alleged that respondent was incarcerated for a conviction of unlawful driving away of a vehicle. It further alleged that respondent had prior convictions for assault and battery, possession of cocaine, retail fraud, home invasion, larceny in a building, and receiving and concealing stolen property. Respondent stipulated to the allegations in the petition. Thereafter, he was released from incarceration and attended supervised visitations with the child. While there were no concerns about his parenting ability, respondent was incarcerated several times during the pendency of this case for drug use, parole violations, and new crimes. He admitted that he was addicted to methamphetamines and had struggled with his addiction for many years. At the time of the termination hearing, respondent was again in prison.

On appeal, respondent does not contest the trial court's findings concerning the statutory grounds or whether the Department of Health and Human Services (DHHS), made "active efforts", see MCL 712B.15(2) and (3) (requiring "active efforts"), toward reunification. Respondent argues solely that the trial court erred in finding that the child's best interests required termination of his

-1-

parental rights instead of instituting a long-term guardianship with the maternal aunt and her husband. Upon review of the record, we disagree.

Because the minor in this case is of Potawatomi descent, determination of whether termination was in the best interests of the child is governed by the Indian Child Welfare Act of 1978 (ICWA), 25 USC 1901 *et seq*., and the Michigan Indian family preservation act (MIFPA), MCL 712B.1 *et seq*. The "ICWA established 'minimum Federal standards for the removal of Indian children from their families to protect the best interests of Indian children and to promote the stability and security of Indian tribes and their families.' " *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 57-58; 874 NW2d 205 (2015), citing to *In re Elliott,* 218 Mich App 196, 201; 554 NW2d 32 (1996). MCL 712B.5 provides:

> In Indian child custody proceedings, the best interests of the Indian child shall be determined, in consultation with the Indian child's tribe, in accordance with the Indian child welfare act, and the policy specified in this section. Courts shall do both of the following:
>
> **(a)** Protect the best interests of Indian children and promote the stability and security of Indian tribes and families.
>
> **(b)** Ensure that the department uses practices, in accordance with the Indian child welfare act, this chapter, and other applicable law, that are designed to prevent the voluntary or involuntary out-of-home care placement of Indian children and, when an out-of-home care placement, adoptive placement, or preadoptive placement is necessary, place an Indian child in a placement that reflects the unique values of the Indian child's tribal culture and that is best able to assist the Indian child in establishing, developing, and maintaining a political, cultural, and social relationship with the Indian child's tribe and tribal community.

Subsection (f) of 25 USC 1912, a provision of the ICWA, governs the federal evidentiary standard necessary to terminate parental rights to an Indian child, and provides as follows:

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

Also, MCL 712B.15(4) states:

> No termination of parental rights may be ordered in a proceeding described in this section without a determination, supported by evidence beyond a reasonable doubt, including testimony of at least 1 qualified expert witness as described in section

17[1], that the continued custody of the Indian child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the Indian child.

Finally, MCR 3.977(G) provides:

**(G) Termination of Parental Rights; Indian Child.** In addition to the required findings in this rule, the parental rights of a parent of an Indian child must not be terminated unless:

(1) the court is satisfied that active efforts as defined in MCR 3.002 have been made to provide remedial service and rehabilitative programs designed to prevent the breakup of the Indian family, and that these efforts have proved unsuccessful, and

(2) the court finds evidence beyond a reasonable doubt, including testimony of at least one qualified expert witness as described in MCL 712B.17, that parental rights should be terminated because continued custody of the child by the parent or Indian custodian will likely result in serious emotional or physical damage to the child.

This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re Laster,* 303 Mich App 485, 496; 845 NW2d 540 (2013). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). In this regard, there must be "a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 USC 1912(f); see also MCL 712B.15(4) and MCR 3.977(G).

In child custody proceedings, and in consultation with a child's tribe, the policy directives and goals of the MIFPA and the ICWA must be considered, when determining the best interests of the child. *In re Beers*, 325 Mich App 653, 661; 926 NW2d 832 (2018), citing to MCL 712B.5. In *In re Beers*, 325 Mich App at 668-669, the Court held that, even though the respondent-father of a Cheyenne River Sioux child was not himself of Native American heritage, his parental rights could not be terminated absent compliance with the MIFPA, the ICWA, and MCR 3.977(G).

Here, the entire record showed that, although respondent appropriately parented the child during supervised visitation, his frequent incarcerations and his inability to control his substance abuse addiction precluded him from providing stability or security in the child's life. Respondent had a long criminal history prior to the birth of this child, and during this case continued to abuse substances and commit further crimes resulting in incarceration. He was incarcerated at the beginning of this case and was in prison during the termination hearing. The record showed that, during the almost three-year pendency of this case, respondent had spent almost two years incarcerated. Respondent demonstrated that he could not remain drug free for longer than a few

---

[1] MCL 712B.17 describes the qualifications required to be a "qualified expert witness."

months, and that he needed constant supervision in order to stay off illegal drugs and away from criminal activity. It is well established that a respondent's substance abuse and addiction may create a reasonable likelihood of harm to the minor child. *In re Beers,* 325 Mich App at 683. Respondent's argument that he would remain sober, find employment, and provide a stable home for his child after his release from prison appeared to be no more than an empty promise given his clear demonstration during the three-year pendency of this case to continue using drugs, and fail to find steady and legal employment, suitable housing, or provide a stable and secure home for his child. The reports showed that, even when he complied with services, he demonstrated no benefit, and as the case progressed he failed to follow through on his counseling and other services.

Contrary to respondent's contention, the record shows that the trial court did not base its decision on respondent's incarceration alone. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). This case is clearly distinguishable from *Mason* where, unlike the respondent in *Mason*, respondent here was provided with extensive services and participated by phone or video in every hearing while incarcerated. DHHS workers maintained contact with respondent and even visited him in prison. The trial court's decision was instead based on respondent's failure to control his drug addiction and benefit from services during periods of non-incarceration and after three years of "active efforts" for reunification.

Respondent asserted that he was to be released from prison in December 2019, and that, upon his release, he would be substance-free, living with his parents and would find suitable employment. He notes that he had been a hands-on father and enjoyed his long and frequent visits with his child. Respondent further argues that the maternal aunt and her husband, the relative caregivers, were open to both a long-term guardianship as well as adoption. In addition, he contends that the court failed to consider the child's placement with relatives, as required by *In re Olive/Metts*, 297 Mich App 35; 823 NW2d 144 (2012), and MCL 712A.19a(8)(a). Further, he maintains that the court did not consider the strong bond between respondent and the child, respondent's parenting ability, his visitation history, or that the child would be safe and well cared for if he lived with respondent upon release. *In re Trejo*, 462 Mich 341; 612 NW2d 407 (2000). Respondent maintained that because the caregivers were agreeable to a long-term guardianship, the trial court clearly erred by terminating his parental rights instead of ordering a guardianship with the maternal aunt.

The ICWA does not require that the court consider a guardianship over termination. In this case, the evidence showed that petitioner, the Pokagon Band representative during the pendency of this case, the expert Indian witness, the Pokagon Tribe, and the guardian ad litem all favored termination of respondent's parental rights over a guardianship. A guardianship would not provide the child with stability and permanency. Instead, it would have created a risk of uncertainty. The child had lived his entire life with his maternal aunt and extended family, was an integrated member of the family and the tribe, and called his maternal aunt and uncle Mom and Dad. Their home was stable and the family lived by the values, beliefs, and practices of the Pokagon Band. The evidence showed that his aunt and uncle considered him to be one of their children and desired to adopt him. When asked about a possible guardianship, they said if that was what the court ordered, they would do anything so that the child could remain with them, but it was not their choice.

At the best interests' stage, the child's interest in a normal and stable family home is superior to any interest respondent might have, *In re Moss*, 301 Mich App 76, 89; 836 NW2d 182 (2013), and is clearly the desire, concern, and purpose of the ICWA. We conclude that the court did not clearly err in finding that returning the child to respondent would cause substantial risk of harm to the child's physical and mental health.

Affirmed.

/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Cynthia Diane Stephens