24CA0893 Peo in Interest of DRM 02-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0893
Adams County District Court No. 22JV30109
Honorable Caryn A. Datz, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of D.R.M., a Child,

and Concerning D.M.,

Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE GROVE
Harris and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

---

Heidi Miller, County Attorney, Conor Hagerty, Assistant County Attorney, Westminster, Colorado, for Appellee

Tausha Riley, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

¶ 1     D.M. (father) appeals the judgment terminating his parent-child legal relationship with D.R.M. (the child).  We affirm.

## I.     Background

¶ 2     In November 2022, the Adams County Human Services Department (Department) received a report that the child was born substance-exposed and had to be treated in the neonatal intensive care unit for withdrawal symptoms.  Mother told the caseworker that she had used controlled substances during her pregnancy; her home did not have running water, heat, or electricity; and father (who lived in the home with mother) was currently incarcerated in the county jail.  The Department also discovered that the parents' parental rights with respect to the child's older sister had previously been terminated and the older child had been adopted by the maternal grandparents.

¶ 3     The Department filed a petition in dependency and neglect, assumed temporary legal custody of the child, and placed her in the care of her maternal grandparents.  Father contested paternity, and the juvenile court ordered him to undergo genetic testing.  He completed the genetic testing while he was serving a community corrections sentence, but shortly thereafter, he absconded from

community corrections. Father did not contact the Department or appear in court for several months; the court eventually entered an adjudication by default judgment. The court then adopted a treatment plan for father that required him to (1) address his substance abuse, mental health, and criminal matters and (2) develop a bond with the child and provide for her needs.

¶ 4     In February 2024, the Department moved to terminate father's parental rights. The juvenile court held a two-day evidentiary hearing in April 2024. After hearing the evidence, the court entered a thorough, written order granting the Department's motion and terminating the parent-child legal relationship between father and the child under section 19-3-604(1)(c), C.R.S. 2024.

## II.     Indian Child Welfare Act

¶ 5     Father asserts that the juvenile court erred by finding that the Department exercised due diligence as required by section 19-1-126(3), C.R.S. 2024, of Colorado's Indian Child Welfare Act (ICWA) statute. We disagree.

### A.     Applicable Law and Standard of Review

¶ 6     For ICWA to apply in a dependency and neglect proceeding, the case must involve an Indian child. *See People in Interest of*

*A.G.-G.*, 899 P.2d 319, 321 (Colo. App. 1995); *see also* 25 U.S.C. § 1903(4) (defining "Indian child" as "any unmarried person who is under age eighteen" and (1) "a member of an Indian tribe," or (2) "eligible for membership in an Indian tribe" and "the biological child of a member of an Indian tribe"). A mere assertion of Indian heritage, without more, is insufficient to give the juvenile court reason to know that the child is an Indian child and trigger the provisions of ICWA. *People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42, ¶ 56. However, Colorado's ICWA statute places additional requirements upon a department when it has information that "the child may have Indian heritage." § 19-1-126(3). Under those circumstances, the court must direct the department to "exercise due diligence in gathering additional information that would assist the court in determining whether there is reason to know that the child is an Indian child." *Id.*; *see also H.J.B. v. People in Interest of A-J.A.B.*, 2023 CO 48, ¶ 5.

¶ 7    To exercise due diligence under section 19-1-126(3), the department should

> earnestly endeavor to investigate the basis for the parent or other participant's assertion that the child may be an Indian child, to contact

> those family members or others who are specifically identified as having knowledge regarding that assertion of general Indian heritage, and to learn whether additional information exists that will help the court determine whether there is a reason to know that the child is an Indian child.

*H.J.B.*, ¶ 57. However, due diligence under section 19-1-126(3) is a flexible standard that does not require the department to "succeed in its efforts" or "exhaust every possible option in attempting to do so." *H.J.B.*, ¶ 58. Nor does it require the department to contact every tribe mentioned by the parent. *Id.* at ¶ 54.

¶ 8 Whether the department satisfied its due diligence obligation is left to the juvenile court's sound discretion, which necessarily requires the court to make credibility determinations regarding the source of the information and the basis for the source's information. *Id.* at ¶ 58.

### B. Analysis

¶ 9 Father asserts that the juvenile court erred by finding that the Department exercised due diligence under section 19-1-126(3) because it did not follow up on information that the child might have Apache, Navajo, or Ute heritage. We are not persuaded.

¶ 10    At a hearing in January 2023, mother's counsel noted that there had been a "finding of non-ICWA in a previous case," but mother nevertheless "believe[d] that she may have Native American heritage." The court inquired of mother, who stated that maternal grandmother "might have a better answer." The court then turned to the maternal grandparents, who attended the hearing. They thought that the family might have Apache, Navajo, or Ute heritage, but otherwise indicated that none of their relatives were members of a tribe. Based on this discussion, the county attorney asked that the maternal grandparents file an ICWA assessment form "so we can fully investigate all those records made."

¶ 11    A few weeks later, the guardian ad litem submitted an ICWA assessment form completed by the maternal grandparents. On the form, the maternal grandparents listed a few relatives, along with dates and places of birth, but they did not provide any possible tribes, including those that they had previously indicated. Because the maternal grandparents did not provide any specific tribal information on the assessment form, the Department sent notice only to the Bureau of Indian Affairs.

¶ 12    In March 2023, the juvenile court asked mother whether she had any additional information, and she indicated that she did not. The court then found that the Department had exercised due diligence by following up on the representations previously made and sending the appropriate notice. The court further found that it did not have any information that the child was an Indian child and therefore ICWA did not apply.

¶ 13    The record supports the juvenile court's finding that that the Department exercised due diligence under section 19-1-126(3). Mother believed that she had Native American heritage and that the maternal grandparents might have additional information. *See H.J.B.*, ¶ 57. Although the maternal grandparents initially indicated that the family may have Apache, Navajo, or Ute heritage, they did not identify any specific tribes when completing the ICWA assessment form. And although they named other relatives, they did not indicate that any of those people had additional information, nor did they provide the Department with any contact information for those individuals. *See id.* Because the Department did not have any other information to further pursue, it sent notice to the Bureau of Indian Affairs. In sum, because the court's

findings are supported by the record and the Department had no duty to contact any tribes, we discern no error in the court's determination that the Department exercised due diligence under section 19-1-126(3). *See H.J.B.*, ¶¶ 54, 58.

### III.   Reasonable Efforts

¶ 14   Father contends that that juvenile court erred by finding that the Department made reasonable efforts to rehabilitate him and reunify him with the child.

### A.   Applicable Law and Standard of Review

¶ 15   Before a juvenile court may find a parent unfit, the county department of human services must make reasonable efforts to rehabilitate parents and reunite families.  §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024.  Reasonable efforts means the "exercise of diligence and care" to reunify parents with their children.  § 19-1-103(114).

¶ 16   Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard.  § 19-1-103(114).  Among the services required under section 19-3-208 are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral

7

services to available public and private assistance resources; family time; and placement services.  § 19-3-208(2)(b).

¶ 17    The juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.  But the parent is ultimately responsible for using the services to comply with the plan.  *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).  And the court may consider a parent's unwillingness to participate in treatment in determining whether the department made reasonable efforts.  *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 18    Whether a department satisfied its obligation to make reasonable efforts is a mixed question of fact and law.  *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.  We review the juvenile court's factual findings for clear error and review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation.  *Id.*

¶ 19    The juvenile court found that the Department made reasonable efforts to rehabilitate father because the caseworker made "ongoing attempts to engage" father "to utilize resources and services." The court noted that the Department had "made referrals for various services," including substance abuse and mental health treatment, monitored sobriety, and family time services. However, based on the evidence presented, the court determined that father did not take "advantage of these services," "only sporadically exercised family time," and "did not remain in consistent contact with the caseworker."

¶ 20    The record supports the juvenile court's findings. The caseworker testified that, at the beginning of the case, father was incarcerated in the county jail, but the Department managed to provide him with a dual diagnosis evaluation while he was in custody. The evaluator recommended that father complete inpatient treatment, but because he was sentenced to community corrections and had to maintain employment, father could only comply with the alternative recommendation of outpatient treatment services. The caseworker said that she attempted to

speak to father about the services that community corrections required him to complete, so that the Department was not duplicating services. However, father did not respond and eventually absconded from community corrections supervision and did not contact the Department for about six months. The caseworker said that, after father was arrested, the Department attempted to start family time while he was still in jail, but he was moved to a prison facility before they could set it up. Thereafter, father was in prison for about three months, and the caseworker said that she was unable to contact father during that time.

¶ 21 Father was released from prison in January 2024. The caseworker testified that, after father was released, she "was calling and texting him approximately four times a week" to try to get services and treatment set up as quickly as possible. The caseworker said that the Department referred father for a new dual diagnosis evaluation in February 2024, but he did not complete it. The caseworker also set up family time for father, but father only attended about ten hours of family time over the next three months. Finally, the caseworker said that the Department made a referral for father to complete drug screens, but he never did any.

10

¶ 22    In sum, the record supports the juvenile court's findings that (1) the Department provided father with the appropriate resources to engage with his treatment plan, but (2) he did not take advantage of those resources and was therefore unsuccessful in becoming fit within a reasonable time.  *See A.V.,* ¶ 12; *J.C.R.,* 259 P.3d at 1285.

¶ 23    Nevertheless, father asserts that the Department did not make reasonable efforts to provide him with substance abuse and mental health services, the caseworker did not contact him, and he was not provided adequate family time.  But his assertions would require us to reweigh the evidence, override the court's credibility determinations, and otherwise substitute our judgment for that of the juvenile court.  *See People in Interest of S.Z.S.,* 2022 COA 133, ¶ 29; *see also People in Interest of A.J.L.,* 243 P.3d 244, 249-50 (Colo. 2010).  Because we cannot do so, we reject father's assertion and conclude that the court did not err by finding that the Department made reasonable efforts.

## IV.    Fitness Within a Reasonable Time

¶ 24    Father argues that the juvenile erred by finding that he could not become fit within a reasonable time.  We disagree.

A. Applicable Law and Standard of Review

¶ 25 An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. *People in Interest of D.P.,* 160 P.3d 351, 353 (Colo. App. 2007). Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental needs and conditions. *People in Interest of A.J.,* 143 P.3d 1143, 1152 (Colo. App. 2006). A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs and, therefore, may also be considered in determining unfitness." *People in Interest of D.P.,* 181 P.3d 403, 408 (Colo. App. 2008).

¶ 26 When deciding whether a parent's conduct or condition is likely to change within a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.,* 70 P.3d 584, 588-89 (Colo. App. 2003). Where a parent has made little to no progress on a treatment plan, the court need not give the

parent additional time to comply. *See People in Interest of R.B.S.*, 717 P.2d 1004, 1006 (Colo. App. 1986).

¶ 27 The determination of a reasonable period is fact-specific and varies from case to case. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007); *see also S.Z.S.*, ¶ 24. However, a reasonable time is not an indefinite time, and it must be determined by considering the child's physical, mental, and emotional conditions and needs. *S.Z.S.*, ¶ 24. As in this case, when a child is under six years old, the juvenile court must also consider the expedited permanency planning provisions, which require that the child be placed in a permanent home as expeditiously as possible. *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024.

¶ 28 Whether the juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

### B. Analysis

¶ 29 The juvenile court found that father's conduct or condition was unlikely to change within a reasonable time. In so concluding,

13

the court noted that the case had been open for seventeen months, the entirety of the child's life. During that time, father did not consistently engage with services and made only "minimal progress" on his treatment plan. The court also considered that father had a "lengthy histor[y] of substance use" and this was "the second child removed from [father's] care due to substance use."

¶ 30     The record supports the juvenile court's findings. The caseworker testified that father had a previous dependency and neglect case with similar concerns that opened in June 2021 and ended with termination of father's parental rights a few months before the child in this case was born. As noted above, father did not participate in substance abuse or mental health treatment during this case, and he only attended about ten hours of family time. And although father testified that he had been sober for about eight months, the caseworker said that, because father had not complied with monitored sobriety, she could not confirm that claim. The caseworker opined that, based on this information, father's conduct or condition was unlikely to change within a reasonable time.

14

¶ 31 Father maintains that the record compels the opposite conclusion, pointing out that he completed the dual diagnosis evaluation, began treatment through parole (including methadone treatment and counseling), was employed, and had a stable home. But the juvenile court specifically considered this evidence and still concluded that father's conduct or condition was unlikely to change within a reasonable time. Thus, father's appellate argument would again require us to reweigh the evidence and substitute our judgment for that of the juvenile court, which we cannot do. *See S.Z.S.*, ¶ 29. Rather, because the record supports the court's finding that father's conduct or condition was unlikely to change within a reasonable time, we reject father's contention.

## V. Less Drastic Alternative

¶ 32 Father maintains that the juvenile court erred by rejecting a less drastic alternative to termination in the form of an allocation of parental responsibilities (APR) to the maternal grandparents. We disagree.

### A. Applicable Law and Standard of Review

¶ 33 Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less

15

drastic alternatives. *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986). In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3). In doing so, the court may consider, among other things, whether (1) an ongoing relationship between the parent and child would be beneficial, *People in Interest of A.R.*, 2012 COA 195M, ¶ 38; (2) an APR provides adequate permanence and stability for the child, *People in Interest of T.E.M.*, 124 P.3d 905, 910-11 (Colo. App. 2005); and (3) the placement prefers adoption over an APR, *S.N-V.*, 300 P.3d at 920.

¶ 34    For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs; rather, it must be in the child's best interests. *A.M.*, ¶ 27. Therefore, if the juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32. And under those circumstances, we must affirm the court's decision if its findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 81.

## B.    Analysis

¶ 35    The juvenile court found that there was no less drastic alternative to termination.  In doing so, the court considered that the child had been in the maternal grandparents' care, together with her sibling, for the entirety of the case.  The court further noted that the maternal grandparents wanted to adopt the child and did not believe that an APR would be a viable option, considering that they had a restraining order against father.  Ultimately, the court determined that, based on the child's young age and her need for permanency, adoption (rather than an APR) was in the child's best interests.

¶ 36    The record supports the juvenile court's findings.  The maternal grandfather testified that the child was placed in maternal grandparents' home after her release from the hospital and that they had recently adopted the child's sibling.  He also said that he preferred adoption over an APR because it was important for the child to know that she was in a stable home and that he had "concerns" about the viability of an APR because of the protection order against father.  Based on this information, as well as father's lack of compliance with his treatment plan, the caseworker opined

17

that termination, and not a less drastic alternative, was in the child's best interests.

¶ 37 In sum, the record shows that the juvenile court considered less drastic alternatives but rejected them because they were not in the child's best interests. *See A.M.*, ¶ 32. And because the record supports the court's finding, we cannot disturb it. *See B.H.*, ¶ 80.

¶ 38 We are not otherwise convinced by father's contention that a less drastic alternative existed because he made progress in treatment, had a bond with the child, and an APR would preserve family ties. To be sure, a juvenile court can consider these issues when deciding if there is a viable less drastic alternative to termination. *See, e.g.*, *People in Interest of N.D.V.*, 224 P.3d 410, 421 (Colo. App. 2009). But they are just some of the factors that are relevant in deciding whether a less drastic alternative is in the child's best interests. *See A.R.*, ¶ 38 (noting that the court "may consider various factors" in its analysis of less drastic alternatives). And in this case, the court determined that there was no viable less drastic alternative to termination based on father's unfitness, the maternal grandparents' preference for adoption, and the child's need for permanency. We cannot reweigh the evidence or

substitute our judgment to reach a different conclusion.  *See B.H.*, ¶ 80; *A.M.*, ¶ 32; *see also S.Z.S.*, ¶ 29.

## VI.    Disposition

¶ 39    The judgment is affirmed.

JUDGE HARRIS and JUDGE PAWAR concur.