24CA1829 Peo in Interest of RR 04-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1829
El Paso County District Court No. 23JV30097
Honorable Diana K. May, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of R.R., a Child,

and Concerning D.A.T.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Gomez and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 24, 2025

---

Kenneth Hodges, County Attorney, Melanie Douglas, Contract Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Harald Van Gaasbeek, Office of Respondent Parents' Counsel, Fort Collins, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, D.A.T. (father) appeals the judgment terminating his parent-child legal relationship with R.R. (the child).  We affirm.

## I.    Background

¶ 2    In January 2023, the El Paso County Department of Human Services (the Department) filed a petition in dependency and neglect regarding the then-two-month-old child and his older half-sister.[1] The Department was concerned that father had physically abused and neglected the child.  Specifically, the Department alleged that days before the petition was filed, maternal grandmother found the child alone in father's trailer and noticed that the child had bruising and was underweight.  The Department further alleged that medical professionals had discovered fractures in the child's legs and were concerned that he was not being fed.  Consequently, father was arrested and charged with felony child abuse resulting in serious bodily injury.

---

[1] The child and his sister have different fathers, and mother does not appeal.  Thus, we refer only to the younger child throughout this opinion.

1

¶ 3     The juvenile court granted temporary legal custody to the Department, and the child was placed in foster care.  Father admitted that the child had been in an injurious environment, and the court adjudicated the child dependent or neglected.  Shortly thereafter, in a separate criminal case, father pled guilty to child abuse resulting in serious bodily injury and was sentenced to four years in the Department of Corrections (DOC).  The juvenile court then adopted a treatment plan that required father to cooperate with the Department, complete his criminal sentence, and meet with the caseworker upon his release from the DOC to develop an amended treatment plan.

¶ 4     The Department later moved to terminate father's parental rights under section 19-3-604(1)(c), C.R.S. 2024.  Thereafter, the guardian ad litem (GAL) moved the juvenile court to make a dispositional finding that no appropriate treatment plan could be devised for father under section 19-3-508(1)(e)(I), C.R.S. 2024.  The Department then amended its termination motion to include termination under section 19-3-604(1)(b)(II).  Over a year-and-a-half after the petition was filed, the juvenile court held a contested

hearing and granted the GAL's dispositional motion and the Department's termination motion.

## II. The Indian Child Welfare Act

¶ 5 Father contends that the juvenile court erred by finding that that the Indian Child Welfare Act (ICWA) of 1978, 25 U.S.C. §§ 1901-1963, did not apply. Father asserts that the court and the Department failed to comply with the due diligence provisions of Colorado's ICWA statute, § 19-1-126, C.R.S. 2024. We are not persuaded.

### A. Applicable Law and Standard of Review

¶ 6 ICWA establishes "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." 25 U.S.C. § 1902. For ICWA to apply in a dependency and neglect proceeding, the case must involve an Indian child. *See People in Interest of A.G.-G.*, 899 P.2d 319, 321 (Colo. App. 1995). "Indian child" is defined as "any unmarried person who is under the age of eighteen" and is either (a) "a member of an Indian tribe" or (b) "eligible for membership in an

Indian tribe" and "the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4); § 19-1-103(83), C.R.S. 2024.

¶ 7 A mere assertion of Indian heritage, without more, is insufficient to give the juvenile court reason to know that the child is an Indian child and trigger the provisions of ICWA. *People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42, ¶ 56. However, Colorado's ICWA statute places additional requirements upon a department when it has information that "the child may have Indian heritage." § 19-1-126(3). Under those circumstances, the court must direct the department to "exercise due diligence in gathering additional information that would assist the court in determining whether there is reason to know that the child is an Indian child." *Id.*; *see also H.J.B. v. People in Interest of A-J.A.B.*, 2023 CO 48, ¶ 5.

¶ 8 Due diligence under section 19-1-126(3) is a flexible standard that does not require the department to "succeed in its efforts" or "exhaust every possible option in attempting to do so." *H.J.B.*, ¶ 58. Nor does it require the department to contact every tribe mentioned by the parent. *Id.* at ¶ 54.

¶ 9 Whether ICWA applies to a proceeding is a question of law that we review de novo. *People in Interest of M.V.*, 2018 COA 163, ¶ 32,

*overruled on other grounds by E.A.M.*, ¶ 56 n.10.  Whether a court correctly applied a legal standard to the particular facts of a case is also a question of law that we review de novo.  *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

### B.  Additional Background

¶ 10     Initially, the child's mother asserted that she may have "Cherokee tribe Native American ancestry."  But mother then completed an ICWA assessment form stating that none of her family members had Native American heritage and that the child was not eligible for membership in a tribe.  Thus, at the initial shelter hearing, the juvenile court found that "as far as maternal lineage, the case would not be governed by [ICWA] unless more or new information comes in through mother or relatives."  At the same hearing, the juvenile court noted that father was "reporting Cherokee heritage" and ordered him to complete the ICWA assessment forms, including the "reason to know form," by the next hearing.

¶ 11     Several months later, the court directed father to complete the ICWA forms at a pre-trial readiness conference and father complied. Father then swore "under penalty of the law" that the information

he provided in the forms was true and accurate. Father's ICWA forms indicated that neither he nor the child were members of any tribe, but he was unsure if the child was eligible for membership. Father was also unsure if any family members had Native American heritage or had lived on a reservation. Father indicated that his uncertainty was because his own father (the child's paternal grandfather) was deceased.

¶ 12 After reviewing father's ICWA forms, the juvenile court noted that father did not "have . . . much information about the paternal side of [his] family." The court then found that there was no reason to know that the child was an Indian child but directed father to immediately let his counsel know if he learned "anything more about [his] family heritage, specifically trial membership eligibility."

¶ 13 Notably, although father had asserted that he may have Indian heritage, the juvenile court did not direct the Department to exercise due diligence under section 19-1-126(3). And father did not request that the court do so. Nonetheless, about a month later, the county attorney informed the court that father had not provided "any named paternal relatives or contact information," which was necessary to "help [the] Department do due diligence" based on

6

father's claim of Indian heritage. The county attorney requested that father complete relative resource affidavits, and the court ordered him to do so within twenty-one days. But nothing in the record indicates that father ever filed those affidavits or provided the Department with names or contact information for any relatives on his paternal side.

¶ 14 At the termination hearing, the juvenile court noted that it had made a "finding of non-ICWA" in May 2023. At that point, father did not provide any updated information about his paternal relatives or possible Indian heritage. Nor did he argue, as he does now, that the court should have ordered due diligence under section 19-1-126(3) or that the Department failed to meet its obligation to exercise due diligence throughout the case.

### C. Analysis

¶ 15 The GAL asserts that father failed to preserve his argument for appeal but concedes that the issue is reviewable on direct appeal, citing *People in Interest of J.O.,* 170 P.3d 840, 842 (Colo. App. 2007). We agree that *J.O.* states that "the notice requirements of . . . ICWA serve the interests of the Indian tribes and, therefore, cannot be waived by a parent and may be raised for the first time on appeal."

7

*Id.* But we are unaware of any case law holding that a parent may raise noncompliance with Colorado's statutory due diligence requirement — an additional requirement that is not part of ICWA's notice requirements — for the first time on appeal. Even assuming without deciding that a parent may raise noncompliance with section 19-1-126(3) for the first time on appeal, we conclude that any error was harmless.

¶ 16    We agree with father's assertion that when the juvenile court found there was no reason to know the child was an Indian child, it was required to direct the Department to exercise due diligence because father had asserted that he may have Indian heritage on his paternal side. *See* § 19-1-126(3); *see also E.A.M.*, ¶ 6 (even if a juvenile court finds that there is no reason to know a child is an Indian child under ICWA, it is nonetheless required to direct the Department to exercise due diligence if the parent has asserted Indian heritage).

¶ 17    However, despite the court's failure to direct the Department to exercise due diligence, the record shows that the Department attempted to comply with its obligation to gather additional information about the child's heritage and report its efforts to the

juvenile court. Recall that father asserted that he did not know if he had Indian heritage because the child's paternal grandfather was deceased. Logically, the Department could not contact the child's paternal grandfather, who was the only identified source of information. *See H.J.B.,* ¶ 58 (due diligence requires the Department to follow up with the identified source of information about the family's heritage). Thereafter, the Department made a record of its inability to exercise due diligence without father providing more information about other family members on his paternal side. Nothing in the record suggests that father provided that information. *See J.O.,* 170 P.3d at 843 (although a department must comply with ICWA's mandatory notice requirements, it is the parent's burden to show that ICWA applies).[2] Without father's cooperation, the Department's ability to follow-up was constrained.

---

[2] We disagree with father's assertion that the juvenile court improperly placed the Department's due diligence obligation on him. Rather, both the federal ICWA regulations and Colorado's ICWA statute require courts to instruct all participants to inform the court if they receive information that gives them reason to know that the child is an Indian child. *See* 25 C.F.R. § 23.107(a); § 19-1-126(1)(a)(I)(A). That is what the court did here; it directed father to let his attorney know if he learned anything more about his family heritage or tribal membership eligibility.

*See H.J.B.*, ¶ 58 (Acknowledging that "[d]ue diligence does not . . . necessarily require the party exercising it to succeed in its efforts or exhaust every possible option in attempting to do so.").

### III.   No Appropriate Treatment Plan

¶ 18    Father next contends that the juvenile court erred by finding that the Department met its burden to prove that no appropriate treatment plan could be devised for him.  Specifically, he asserts that the juvenile court improperly relied on inadmissible evidence in finding that father caused serious bodily harm to the child.  He argues that without the inadmissible evidence, the remaining evidence was insufficient to prove that he was unfit based on a single incident resulting in serious bodily injury.  We disagree.

### A.   Preservation

¶ 19    The Department and GAL assert that father failed to preserve his sufficiency of the evidence argument because he did not raise it in the juvenile court.  But we generally review claims involving the sufficiency of the evidence of the statutory criteria for termination of parental rights regardless of preservation.  *See People in Interest of S.N-V.*, 300 P.3d 911, 918 (Colo. App. 2011).

¶ 20   Nonetheless, there is a distinction between reviewing whether the evidence was sufficient to meet the statutory criteria for termination and reviewing whether the evidence was admissible in the first place.  Here, father argues that the court improperly took judicial notice of his criminal case, specifically his guilty plea, and erroneously considered a caseworker's inadmissible testimony about the child's injuries.  But at the termination hearing, father did not object when the juvenile court took judicial notice of his criminal case and guilty plea or when the caseworker testified about the child's injuries.  And he did not argue, as he does now, that the court was required to disregard that evidence.  Thus, while we will review whether the evidence was sufficient to support the court's termination findings under section 19-3-604(1)(b)(II), we will not consider for the first time on appeal whether the evidence was admissible.  *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 (in dependency and neglect cases, appellate courts review only issues presented to and ruled on by the lower court).

                    B.    Applicable Law and Standard of Review

¶ 21   Under limited circumstances, a court may find after adjudication that an appropriate treatment plan cannot be devised

11

for a particular parent.  § 19-3-508(1)(e)(I); *People in Interest of Z.P.S.*, 2016 COA 20, ¶ 16.  One of those circumstances is when a parent is unfit based on a single incident resulting in serious bodily injury (SBI) to the child.  §§ 19-3-508(1)(e)(I), 19-3-604(1)(b)(II).  A court may conclude that no appropriate treatment plan can be devised based solely on the evidence of SBI.  *People in Interest of L.S.*, 2023 CO 3M, ¶ 32.  And where a court finds by clear and convincing evidence that no appropriate treatment plan can be devised based on a single incident resulting in SBI, it may terminate a parent's rights.  § 19-3-604(1)(b)(II).

¶ 22    The question of whether a juvenile court properly terminated parental rights is a mixed question of fact and law.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.  Thus, we review the court's factual findings for clear error but review de novo its legal conclusions based on those facts.  *Id.*  There is clear error when the court's factual findings find no support in the record.  *See People in Interest of A.J.L.*, 243 P.3d 244, 250 (Colo. 2010).

### C.    Analysis

¶ 23    After considering the evidence presented at the termination hearing, the juvenile court found that no appropriate treatment

12

plan could be devised for father because he had subjected the child to SBI. The court also found that father was unfit based on a single incident that resulted in SBI to the child. Based on those findings, the court concluded that the Department met its burden to show that father's parental rights should be terminated under section 19-3-604(1)(b)(II).

¶ 24     The record supports these findings. First, the juvenile court took judicial notice of El Paso County Case No. 23CR483 and the "information within the file," which listed the child as the victim. The court specifically took judicial notice of the fact that in May 2023, father pled guilty to felony child abuse resulting in SBI under section 18-6-401(1)(a), (7)(a)(IV), C.R.S. 2024. We note that a guilty plea is an admission of all the elements of a criminal charge. *See Neuhaus v. People*, 2012 CO 65, ¶ 8. And in his plea agreement, father specifically admitted that the crime "actually occurred" and "happened exactly as defined by the elements of the crime." Thus, by pleading guilty, father admitted that he had "caus[ed] an injury to a child's life or health, or permit[ted] a child to be unreasonably placed in a situation that pose[d] a threat of injury to the child's life

or health," which "result[ed] in serious bodily injury to the child." *See* § 18-6-401(1)(a), (7)(a)(IV).

¶ 25    Second, several witnesses testified about the incident that led to father's arrest, child abuse charges, and eventual guilty plea. Maternal grandmother testified that when she found the two-month-old child alone in father's trailer, she noticed bruises "all over" him and could tell he had been beaten, which is why she immediately called 911. Next, the caseworker testified that the child suffered "multiple" broken bones "at the hands of his father." She stated that the child had "old and new fractures" and bruising on his head and back. Last, the child's foster mother testified that after the child was released from the hospital, she had to take him to follow-up appointments to make sure that his broken bones were healing.

¶ 26    We reject father's argument that the evidence was not sufficient to establish that he caused SBI as defined by section 18-1-901(3)(p), C.R.S. 2024, of Colorado's Criminal Code. As father notes, Colorado Children's Code does not define SBI. But father does not point us to any legal authority stating that a juvenile court must apply the definition of SBI in section 18-1-901(3)(p) when

terminating parental rights under section 19-3-604(1)(b)(II). Nonetheless, even assuming without deciding that the definition of SBI under section 18-1-901(3)(p) applies to the Children's Code, father's argument still fails because that definition includes any bodily injury that involves "breaks" or "fractures." *See* § 18-1-901(3)(p). As noted above, both the caseworker and the child's foster mother testified that the child's injuries included broken bones.

¶ 27    Based on the foregoing, we conclude that the evidence was sufficient to support the juvenile court's finding that no appropriate treatment plan could be devised for father based on a single incident resulting in SBI to the child. Therefore, we discern no basis for reversal.

## IV.   Disposition

¶ 28    The judgment is affirmed.

JUDGE GOMEZ and JUDGE LUM concur.