25CA1467 Peo in Interest of CMS 04-09-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1467
City and County of Denver Juvenile Court No. 23JV30436
Honorable Laurie Clark, Judge

The People of the State of Colorado,

Appellee,

In the Interest of C.M.S., a Child,

and Concerning T.P.S.,

Appellant.

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE GRAHAM*
Román, C.J., and Ashby*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 9, 2026

Miko Brown, City Attorney, Christina R. Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Beth Padilla, Office of Respondent Parents' Counsel, Durango, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     In this dependency and neglect proceeding, T.P.S. (mother) appeals the judgment terminating her parent-child legal relationship with C.M.S. (the child).  We affirm.

## I.     Background

¶ 2     Denver Human Services (the Department) filed a petition in dependency or neglect concerning then four-year-old C.M.S. and her two-year-old brother.  The petition alleged substance use by mother and that the children, who were developmentally delayed, had not received regular medical care.

¶ 3     Mother entered a no-fault admission, and the juvenile court adjudicated the children dependent and neglected.  The court then adopted a treatment plan for mother requiring her to (1) attend family time and learn about the children's needs; (2) complete a mental evaluation and follow treatment recommendations; (3) participate in a substance abuse evaluation, follow recommendations, and submit to sobriety monitoring; and (4) cooperate with professionals.

¶ 4     The Department then moved to terminate mother's parental rights regarding C.M.S.  Her younger child, who was also subject to a termination motion, is not affected by this appeal. Over two years

after the petition was filed, following a hearing held over three days in the span of a month, the court terminated mother's parental rights.

## II. The Indian Child Welfare Act (ICWA)

¶ 5 Mother asserts that the case, having first been remanded for ICWA certification, must again be remanded because the juvenile court and the Department failed to comply with the due diligence provisions of Colorado's statute implementing ICWA. *See* §§ 19-1.2-101 to -132, C.R.S. 2025 (requiring compliance with federal ICWA statute). We disagree that a further remand is required.

## A. Applicable Law

¶ 6 ICWA establishes "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." 25 U.S.C. § 1902. For ICWA to apply in a dependency or neglect proceeding, the case must involve an Indian child. *See People in Interest of A.G.-G.*, 899 P.2d 319, 321 (Colo. App. 1995). An "Indian child" is "any unmarried person . . . under the age of eighteen" who is either (a) "a member of an Indian tribe"

2

or (b) "eligible for membership in an Indian tribe" and "the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4); § 19-1.2-103(10).

¶ 7 A mere assertion of Indian heritage, without more, is insufficient to give the juvenile court reason to know that the child is an Indian child and trigger the provisions of ICWA. *People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42, ¶ 56. However, Colorado's ICWA statute places additional requirements upon a department when it has information that "the child may have Indian heritage." § 19-1.2-107(4)(a). Under those circumstances, the court must direct the department to "exercise due diligence in gathering additional information that would assist the court in determining whether there is reason to know that the child is an Indian child." *Id.*; *H.J.B. v. People in Interest of A-J.A.B.*, 2023 CO 48, ¶ 5.

## B. Analysis

¶ 8 After mother filed her opening brief, the parties jointly requested a limited remand to allow the juvenile court and the Department to comply with the inquiry requirements of ICWA. We remanded the case for the limited purpose of resolving the ICWA issues.

¶ 9　　In mother's reply brief, she argues that a second remand is required because due diligence was not exercised when the Department failed to contact the Cherokee Nation "as instructed," and because of "an unclear record as to the applicability of ICWA," caused by the court's failure to "issue any order that is included in the record." But the juvenile court issued a thorough written order concluding that ICWA's due diligence requirements were satisfied, that the child was not an Indian child, and that the proceedings were therefore not governed by ICWA.

¶ 10　　The record supports the court's findings. Mother maintained throughout the proceedings that she did not have American Indian or Alaska Native heritage and filed a declaration disclaiming such heritage. Father did not participate in the proceedings, so there was no information as to any relevant paternal heritage.

¶ 11　　Early in the case, maternal grandmother reported Cherokee heritage but that no family members were enrolled in a tribe. Grandmother later explained that her own grandmother either lived on a reservation or was a member of a tribe, but that she did not know which tribe and that her "older brother ha[d] that information . . ."

¶ 12    On remand, the caseworker attempted to contact mother, maternal grandmother, maternal grandmother's boyfriend, and maternal great-uncle, but received no responses. The Department sent certified mailings to the Eastern Band of Cherokee Indians and United Keetoowah Band of Cherokee Indians. The Eastern Band of Cherokee Indians responded that the child was not a member of the tribe or eligible for membership. The United Keetoowah Band of Cherokee Indians received the Department's certified mailing but sent no response.

¶ 13    The record contains an email notice from the Cherokee Nation informing the Department that the child was not a member of the tribe or eligible for membership. The email included instructions on how to "receive an official response letter." Mother argues that the Department did not request an official response letter, but we are not aware of any authority that the Cherokee Nation's email was insufficient to satisfy the due diligence requirement. *See* § 19-1.2-107(4)(b)(VI) (due diligence includes "[c]ontacting the tribal representative or representatives by *e-mail*, phone call, letter, or any other means agreed to by the parties . . .") (emphasis added).

¶ 14    Based on this record, we conclude that the juvenile court and

Department have sufficiently complied with ICWA.  Because the

child is not an Indian child, ICWA does not apply.  Therefore, we

discern no basis to again return the matter to the juvenile court for

additional investigation.

## III.    Continuance

¶ 15    Mother contends that the juvenile court erred in denying her

counsel's request for a continuance.  We disagree.

### A.    Applicable Law and Standard of Review

¶ 16    The Colorado Children's Code directs courts to "proceed with

all possible speed to a legal determination that will serve the best

interests of the child."  § 19-1-102(1)(c), C.R.S. 2025.  Thus, when

ruling on a motion to continue, the juvenile court "should balance

the need for orderly and expeditious administration of justice

against the facts underlying the motion and the child's need for

permanency."  *People in Interest of R.J.B.*, 2021 COA 4, ¶ 11.

¶ 17    When, as in this case, a child is under six years old at the time

a petition in dependency or neglect is filed, the expedited

permanency planning (EPP) provisions of the Children's Code

provide that a juvenile court cannot grant a continuance unless the

moving party establishes (1) good cause for the continuance and (2) that the continuance will serve the child's best interests. § 19-3-104, C.R.S. 2025.

¶ 18    A continuance motion is left to the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent a clear abuse of that discretion. *People in Interest of A.J.*, 143 P.3d 1143, 1150 (Colo. App. 2006). A court abuses its discretion when its decision was manifestly arbitrary, unreasonable, unfair, or based on a misapplication or misconstruction of the law. *People in Interest of E.B.*, 2022 CO 55, ¶ 14.

¶ 19    We review procedural due process claims de novo. *R.J.B.*, ¶ 26. But a parent is not entitled to relief on a due process claim absent a showing of harm or prejudice. *People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007).

### B.    Additional Background

¶ 20    Mother did not attend any court proceedings for nearly a year before the termination hearing. At a hearing held approximately four and a half months before the termination hearing, mother's counsel conceded that mother "ha[d] not been fully engaged in this case."

¶ 21    At the start of the termination hearing, mother's counsel requested a continuance "on behalf of [mother] given that she is not here . . . ." Mother's counsel requested "about a thirty-day continuance" and explained that she had received an email from mother "indicating [mother's] intention to be in court." The juvenile court denied the request. On the second day of the hearing, the juvenile court asked mother's counsel about mother's failure to appear, but mother's counsel declined to make a further record. Mother did not appear for any of the three days of the termination hearing.

¶ 22    Mother's counsel also requested the continuance because "due to some of the communication difficulties" with mother, her counsel "was not able to subpoena" mother's treatment providers, and "[mother] might have wanted [her counsel] to have done that." But mother's counsel requested the continuance "primarily due to [mother's] nonappearance."

¶ 23    On the second day of the termination hearing, held four days after the first, mother's counsel called maternal grandmother to testify. Mother's counsel did not call any other witnesses but cross-examined both Department witnesses. On the third day of

the hearing, held one month after the first day, the court asked mother's counsel if she had any further witnesses, but she had none.

## C.    Analysis

¶ 24    Mother argues that the juvenile court abused its discretion in denying her request for a continuance because her counsel was not prepared, thus her due process rights were violated because she was not able to call witnesses that could have demonstrated her compliance with the treatment plan.  Mother also argues that it was in the child's best interests to continue the case to ensure that mother received adequate representation.

¶ 25    The juvenile court denied mother's request, finding that it was not in the child's best interests and that mother knew about the hearing.  But the court told mother's counsel that if she obtained "additional information with documentation . . . in regards to the reason why [mother]" was not there, the court would "address that once [it was] made aware of it."

¶ 26    The record supports these findings.  The guardian ad litem (GAL) objected to a continuance, telling the court that the child had "asked about permanency and about whether or not she can feel

9

stable in her current placement."  Because this was an EPP case and the child was "well aware . . . about her lack of permanency," the GAL argued that a continuance would not be in the child's best interest.  Furthermore, mother had established a pattern of not appearing for court or engaging in the case.

¶ 27     Mother also argues that her attorney "called no witnesses on her behalf, which could have occurred if a continuance was granted."  But the record refutes this argument because mother's attorney called maternal grandmother on mother's behalf.  Mother further argues that "[i]f the trial court would have given mother's attorney a few weeks to get the therapists under subpoena, the delay would have been de minimis."  But the court offered mother's attorney another opportunity to call witnesses a full month after the request for a continuance.  Added to that was the opportunity to appear at one of the hearing dates over the course of that month but she failed to appear.

¶ 28     While mother generally asserts that "[t]he fact that her attorney broached the subject of having the treatment providers testify demonstrates that the missing testimony could have been helpful to mother," mother's counsel did not make any offer of proof

or provide any specifics allowing us to discern how "the termination proceedings would have been affected in any appreciable way" by a treatment providers' testimony. *E.B.*, ¶ 22 (citing *People in Interest of C.G.*, 885 P.2d 355, 358 (Colo. App. 1994)).

¶ 29 We therefore determine that the court did not abuse its discretion by denying mother's continuance request. And because mother has failed to demonstrate any actual prejudice resulting from the juvenile court's orders, we conclude that her due process claim must fail. *See J.A.S.*, 160 P.3d at 262.

## IV. Ineffective Assistance of Counsel

¶ 30 Mother alleges that her counsel provided ineffective assistance by failing to subpoena and call her treatment providers to testify about her treatment plan compliance. We are not persuaded.

### A. Applicable Law

¶ 31 A parent has a statutory right to appointed counsel in dependency and neglect proceedings. §§ 19-1-105(2), 19-3-202(1), C.R.S. 2025. A parent's statutory right to counsel includes the right to effective assistance of counsel. *A.R. v. D.R.*, 2020 CO 10, ¶ 47.

¶ 32    We employ the same *Strickland* test that is used in criminal cases to evaluate ineffective assistance of counsel claims in dependency and neglect proceedings. *See id.* at ¶¶ 48, 60 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under this test, to establish a claim, the parent must show that (1) counsel's performance was outside the wide range of professionally competent assistance, and (2) the parent was prejudiced by counsel's deficient performance — that is, there is a reasonable probability that but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id.* at ¶¶ 48-49, 60. "If the parent fails to establish either prong of this test, the claim fails." *People in Interest of C.B.*, 2019 COA 168, ¶ 26.

¶ 33    We must remand for an evidentiary hearing if the parent's allegations are sufficiently specific and compelling to constitute a prima facie showing of ineffective assistance of counsel. *A.R.*, ¶ 63. But if the parent's allegations lack specificity, we may summarily deny the ineffective assistance claim. *Id.*

### B.    Analysis

¶ 34    Even assuming, without deciding, that mother's counsel's performance fell below the range of professionally competent

assistance, mother has not shown that she was prejudiced by counsel's deficient performance such that, but for counsel's failure to subpoena certain witnesses, the result of the proceeding would have been different. *See A.R.,* ¶ 28.

¶ 35     Mother argues that her treatment providers could have testified that she engaged in treatment throughout the case because she (1) completed a signal evaluation; (2) participated in sessions at the Denver Recovery Center; (3) reported to the court, nearly a year before the termination hearing, that she was engaging in therapy; and (4) engaged in a new therapy intake five months before the termination hearing. But mother concedes in her opening brief that the "details" of the treatment providers' potential testimony "are widely unknown."

¶ 36     As we discussed above, mother's broad assertion that "the missing testimony could have been helpful," does not allow us to discern how the proceedings would have been affected by the treatment providers' testimony, especially given that the Department presented evidence on all issues raised by mother in her opening brief.

¶ 37    The caseworker testified that mother completed the signal evaluation, but that she did not follow its recommendations. The termination report referenced mother's treatment at the Denver Recovery Center, but also that she stopped engaging nearly ten months before the termination hearing. The caseworker testified that mother worked with a therapist on her mental health earlier in the case, but that mother had not had any contact with the therapist "for quite a few months."

¶ 38    Regarding the therapy intake, the caseworker explained that mother completed an intake for substance use and mental health treatment, but that the caseworker had to make a new referral because "[t]here was somewhat of an incident where [the treatment provider] then would no longer take [mother] as a client there." But mother did not complete the second intake.

¶ 39    Even if treatment providers testified to some additional compliance, the record shows that mother did not comply with many aspects of her treatment plan. The caseworker testified that mother reported throughout the case that she was not sober and had been using substances including methamphetamine and fentanyl. And mother missed most of her urinalysis tests. The

14

caseworker reported that she had not seen mother in person for approximately nine months, had not had email contact for four months, and had not spoken with mother for two months. The caseworker also testified that mother had not seen the child for over eighteen months.

¶ 40 Ultimately, the caseworker opined that mother did not comply with her treatment plan. And the juvenile court concluded that mother did not comply with her treatment plan and had not internalized the services provided. *See A.J.*, 143 P.3d at 1151 (partial or even substantial compliance with a treatment plan "may not be sufficient to correct or improve the parent's conduct or condition").

¶ 41 For these reasons, we conclude that mother has not raised sufficiently specific and compelling allegations of prejudice to constitute a prima facie showing of ineffective assistance of counsel. *A.R.*, ¶ 63. We therefore reject her claim.

## V. Child's Best Interests

¶ 42 Relying on section 19-7-203, C.R.S. 2025 (addressing the rights of siblings in foster care), mother argues that termination of parental rights was not in the child's best interests because the

child was separated from her younger brother and did not have contact with family members.

¶ 43    We acknowledge that section 19-7-203 evinces the legislature's expressed importance of placing siblings together in foster homes when it is in the best interests of each sibling. Here, however there was a sharp contrast between the needs of C.M.S. and her younger sibling who had special needs, required special care and had not yet been placed in a permanent home. The court considered the special needs of C.M.S.'s younger brother and circumstances of her other half-siblings and determined that the permanency of adoption for the C.M.S supplanted the possible placement with the special needs brother. The court recognized that children under the age of six are at a critical stage of development and without timely permanency will suffer emotional damage. This argues in favor of placement in a permanent home as quickly as possible and, on balance, is in the best interest of the child.

¶ 44    The trial court made factual findings as to why joint placement of C.M.S. with her younger brother or other half-siblings was not in her best interests. And those findings are supported by

the record. Consequently, we conclude that the court did not abuse its discretion in concluding that C.M.S.'s separate permanent placement was in her best interests.

## VI. Disposition

¶ 45    The judgment is affirmed.

CHIEF JUDGE ROMÁN and JUDGE ASHBY concur.